### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### PIONEER NATURAL GAS COMPANY, Respondent.

No. 24848.

United States Court of Appeals
Fifth Circuit.

July 3, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Mitchell Strickler, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Richard Adelman, Attys., N.L.R.B., Washington, D.C., for petitioner.

Stanley E. Neely, Larry M. Lesh, Maurice E. Purnell, Jr., Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for respondent, Pioneer Natural Gas Co., W. N. Lampe, Amarillo, Tex., of counsel.

Before THORNBERRY and SIMPSON, Circuit Judges, and ATKINS, District Judge.

ATKINS, District Judge:

The National Labor Relations Board petitions this Court pursuant to Section 10(e) of the National Labor Relations Act for enforcement of its order issued on June 6, 1966.

The Board found that Pioneer Natural Gas Co. violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain collectively with Local 340 of the International Union of Operating Engineers, AFL-CIO. The union had been certified as the exclusive bargaining representative for "all production and maintenance of employees of the Employer's Turkey Creek Compressor and gasoline plant, Fritch, Texas, excluding office clerical employees, professional employees, guards and supervisors, as defined in the Act." Pioneer unsuccessfully contended before the Board that the employees of the Turkey Creek station did not constitute an appropriate bargaining unit. The company has refused to bargain with the union in order that it may challenge the Board's determination. We deny enforcement of the order.

Pioneer is a public utility company organized and existing under the laws of Texas for the purpose of transmitting and distributing gas to the public. It was formed by the merger of several companies in 1954 in order to provide an integrated operation of transmitting the gas from the various points of production to the ultimate consumer.

The subject Turkey Creek Station located at Fritch, Texas, together with its employees is one of two compressor stations and gasoline plants acquired by Pioneer in 1959 from Amarillo Oil Company. The employees at the Turkey Creek Station, since 1959, have continuously been subject to Pioneer's uniform labor relations policies which are centrally controlled and determined and uniformly applied on a system-wide basis. In short, Turkey Creek employees are Pioneer employees in every respect. This particular station fits into the present scheme of things at Pioneer by being only one of twelve mainline compressor stations and one of three combined compressor stations and gasoline plants. The station is a small integrated and interdependent part of the Pioneer system. There is a superintendent in charge of the crew of about twenty-two employees. He does not, however, have the authority to hire and fire employees at the station. Notwithstanding the Board's conclusion to the contrary, it unequivocally appears from the record that there were a substantial number of employees transferred from the Turkey Creek Station to other plants in the system on a permanent basis. In point of fact, from July 1, 1962 to May 1, 1965 there were approximately twenty permanent transfers in and out of the subject station involving both distribution and transmission employees. There is no evidentiary support in the record for the Regional Director's finding and the Board's argument that temporary transfers in and out of the subject plant have been of an emergency nature or limited in nature or number. The record amply demonstrates that there have been temporary transfers.

In 1954 the union petitioned for an election in a unit consisting of certain transmission and distribution employees. The Board dismissed the petition because the unit sought by the union neither encompassed Pioneer's entire system nor conformed to any administrative subdivision.

In 1958 the union petitioned for and was granted an election in a unit consisting of all the transmission and distribution employees in Pioneer's system. The union lost the election. In June, 1962 the union petitioned for an election in a less than system-wide unit of Pioneer's employees. The Board directed an election in a unit encompassing Pioneer's entire system. Employees at Turkey Creek station were among those that voted. Again the union lost.

In November, 1964 the union petitioned for an election in a unit limited to service department employees at Pioneer's establishment in Lubbock, Texas. The Regional Director dismissed the Union's petition by letter dated November 18, 1964 because "there is no evidence at this time to warrant a conclusion that less than a system-wide unit is appropriate for collective bargaining purposes." The Board refused to review the decision.

Also in November, 1964 the Union petitioned for an election in a unit consisting of certain distribution, transmission, meter shop, service department and dispatcher employees in Pioneer's Amarillo district. Included in this unit are some employees who perform work daily at the Turkey Creek station. The Board directed an election in a unit which included only the distribution employees in Pioneer's Amarillo Division. The Board expressly found the unit to be a system-wide unit.

The petition in the case at bar was filed on April 1, 1965. The Regional Director dismissed the petition, without a hearing, on the ground that the unit was inappropriate for collective bargaining purposes. On review, the Board directed the Regional Director to hold a hearing to determine whether the unit was appropriate. The Regional Director thereafter issued a decision directing an election in the unit sought by the union. In the order, the Regional Director stated:

Thus, it may be seen that there is much to be found in the way of merit to the position of the Employer that a combination of its transmission and distribution facilities should be found to be an appropriate system-wide unit. In fact the Board and the Regional Director in the past have made such a determination but no successful collective bargaining history followed. Although the system-wide unit may be the optimum unit, the Board has on many occasions stated that it would not deprive employees of their present right to collective bargaining in a unit less extensive than the optimum unit where it can be shown to be appropriate. The Turkey Creek compressor and gasoline plant appears to be appropriate and we so find. It is readily identifiable, homogeneous, and well recognized as one of the separate functions in the Employer's integrated system. The plant is separately supervised, exercises day to day autonomy including vital decisions on which employees it will hire. The record contains evidence of several transfers during the past few years from other divisions of the system to the Turkey Creek plant and transfers out. Temporary transfers in or out have been of an emergency nature. The Turkey Creek plant in the past, while owned and operated by another corporation, has been certified as an appropriate unit and was later on decertified. At present the Fain compressor and gasoline plant is certified as an appropriate unit and has a collective bargaining contract. Moreover, in Case No. 16–RC–3834 the Amarillo division of the distribution department was determined to constitute an appropriate unit. In the absence of collective bargaining history to the contrary, the lack of any union requesting to represent the employees in a more extensive unit, and in view of the Petitioner's desire to represent these particular employees which must be considered, we have found as noted above that the Turkey Creek plant is an appropriate separate plant unit. Sav-On-Drug, 138 NLRB 1032; Dixie Belle Mills, 139 NLRB 629; The Black and Decker Manufacturing Co., 147 NLRB No. 101; Bagdad Copper Company, 141, Marks Oxygen Co., Alabama, 147 NLRB No. 31; and City Service Oil Co., 145 NLRB 467, 471.

The Board affirmed. The election was held and the union was certified. Upon refusing to bargain with the union, the company was held in violation of the Act. The Board now seeks enforcement of the order.

Subsequent to the commencement of these proceedings, the union on March 30, 1966 petitioned for an election in a unit composed of employees in Pioneer's transmission division (excluding those at Turkey Creek station and Amarillo Oil Company's station at Fain, Texas). The union lost the election.

The respondent asserts that the Regional Director's determination of the appropriate unit is not supported by substantial evidence in the record and it represents a significant departure from established Board policy without sufficient explanation.

Prior to this decision, the Board's policy, especially in the utility field, was that the appropriate units must be system wide, except in the case of more limited units which conform to functional and administrative divisions of the utility. This policy was in the past applied to the respondent.

In the instant case, the integrated nature of the Employer's operations, its central control of management and labor relations, the employee of management and labor relations, the employee interchange, the similarity of classifications, and the uniformity of the wage scales and working conditions throughout the system, * * *, all indicate that the unit sought by the Petitioner is inappropriate. Pioneer Natural Gas Co., 111 NLRB 502, 503–504 (1954).

These significant conditions, according to the respondent, have not changed. Its position is supported by the record.

As previously indicated, Pioneer adheres to uniform labor relations policies which are centrally controlled and determined and uniformly applied on a system-wide basis. The Turkey Creek Station is not an autonomous entity. Although there is a local supervisor, he does not have the authority to hire and fire. This responsibility is reposed in a supervisor of all three of Pioneer's compressor and gasoline plants. The subject station is but one of twelve mainline compressor stations and one of three combined compressor stations and gasoline stations. Functionally, it is an integrated and interdependent part of the Pioneer system. The job classifications at Pioneer's other compressor stations are the same as those at Turkey Creek. The same skills and qualifications are utilized in each of its stations. Wages and working conditions are uniform throughout Pioneer's system.

The Board's determination that the Turkey Creek Station is an appropriate unit for collective bargaining purposes is not supported by substantial evidence. The clear import of the record is that it is not an appropriate unit for collective bargaining purposes.

In N.L.R.B. v. W G O K, Inc., 384 F.2d 500, 504 (5th Cir., 1967), this Court stated:

We are mindful that our review of the Board's unit determination is narrowly limited * * * but nevertheless conclude that where the Board makes an unexplained departure from its established criteria for unit determination we should deny enforcement * * *.

According to the standard set forth in Rayonier, Inc. v. N.L.R.B., 380 F.2d 187 (5th Cir. 1967), the reasons for the departure must be contained in the findings of the Regional Director as affirmed by the Board. The court may not accept appellate counsel's *post hoc* rationalizations for agency action.

In view of the inconsistency between the testimony heard by the Regional Director and his findings his order directing an election to be conducted at the Turkey Creek Station represents an unexplained departure from established criteria for unit determination.

Upon considering Pioneer's prior experiences in unionization, it does appear with little doubt that unionization at Turkey Creek was the last hope for achieving some form of unionization at Pioneer. The Regional Director in his order does reveal an awareness and concern for this fact. To what extent it played in shaping his order is questiona-

ble and subject to conjecture. It therefore cannot be concluded whether the mandate contained in Section 9(c) (5) of the Act has been violated. Section 9(c) (5) of the Act does provide that in "determining whether a unit is appropriate for [bargaining] the extent to which the employees have [been] organized shall not be controlling." Suffice it to say that this Court will not grant the Board's petition for enforcement of its order because it is not supported by substantial evidence in the record and because it represents an unexplained departure from established criteria for unit determination.

The petition of the Board for enforcement accordingly is hereby denied.