**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PINKERTON'S, INC., Respondent.**

**No. 19164.**

United States Court of Appeals,
Sixth Circuit.

June 4, 1970.

Baruch A. Fellner, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene Granof, Atty., N.L.R.B., Washington, D. C., on brief.

Eugene B. Schwartz, Cleveland, Ohio, for respondent; Carl H. Clark, David W. Byers, Stanley, Smoyer & Schwartz, Cleveland, Ohio, on brief.

Before McCREE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The National Labor Relations Board filed a petition in this court for enforcement of its order requiring Pinkerton's, Inc., the Respondent, to bargain collectively with the International Union, United Plant Guard Workers of America, as the exclusive representative of all employees in the unit found by the Board to be appropriate.

Respondent contends that the Board's determination of the bargaining unit was invalid in that the Board abused its discretion in determining what employees constituted the bargaining unit.

The evidence discloses that Pinkerton's, the Respondent, is a nationwide organization with headquarters in New York City, and with regional and district of-

fices throughout the United States; that a regional office is located in Cleveland, and one of the eight districts, comprising the Cleveland region, is located in Columbus; that the Columbus District employs 480 guards and encompasses a 250-mile area which includes parts of Ohio, Kentucky, and West Virginia. One of the field jurisdictions within the Columbus District is composed of the Ohio cities of Mansfield, Shelby, and Crestline.

The Board determined that the appropriate bargaining unit, in this case, consisted of 31 guards in the Mansfield area. Respondent asserts that the bargaining unit in question, instead of being limited to the 31 guards in the Mansfield area, should have comprised the entire Columbus District which, as mentioned, was composed of 480 guards.

The issue in this case is whether the National Labor Relations Board exercised proper discretion in determining a bargaining unit for a certain number of employees in Pinkerton's, Inc., a detective and guard agency, or whether it abused that discretion. The Board contends that it did not abuse its discretion in its determination; and files a petition for enforcement of its order.

The problem raised by the Board's determination in this and similar cases depends upon the circumstances in each individual instance, and the issues of differentiation are sometimes difficult to discern.

The Board bases its petition for enforcement on the statute and the circumstances affecting the unit which it determined as the proper bargaining unit.

The provision of the statute which the Board claims is the justification of its action in determining the bargaining unit in this case, is Section 9(b) of the National Labor Relations Act, 29 U.S.C.A., Sec. 159(b), which sets forth that: "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

In determining the authority of the Board, this court has said: "The Board has the authority under the Act to determine the appropriate unit for collective bargaining. It has wide discretionary powers in this respect. What is an appropriate unit is a question of fact to be determined by the Board upon the facts of each case. Its decision will not be disturbed except for an abuse of discretion or violation of the statute." N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750, 756 (1965), certiorari denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74.

However, the above provision, while not intended to prohibit the Board from considering the extent of organization as one factor, was not intended to authorize the Board to consider the extent of organization as the controlling factor, N.L.R.B. v. Winn-Dixie Stores, Inc., supra. It, of course, is obvious that there may be more than one appropriate unit, and, if so, the determination of which is the appropriate unit is for the Board. In order to avoid enforcement of an order to carry out such determination, the Respondent must show that the Board has abused its discretion. We assume that to require a bargaining unit to comport to the employer's administrative organization would unduly restrict employees' freedom under Section 9(b) of the Act. See State Farm Mutual Automobile Ins. Co. v. N.L.R.B., 411 F.2d 356 (C.A.7, 1969). It is to be said that this opinion agrees with everything that is said in the accompanying opinion with regard to N.L.R.B. v. Winn-Dixie Stores, Inc., supra, and State Farm Mutual Automobile Ins. Co. v. N.L.R.B., supra.

In N.L.R.B. v. Solis Theatre Corp., 403 F.2d 381 (C.A.2, 1968), where there was a chain of 15 theatres located in Manhattan, the Bronx, Brooklyn, Queens, Long Beach, and West Haverstraw, New York, the Board found one theatre located in Brooklyn to be an appropriate bargaining unit, basing such unit determination on the role of the local manager of

that theatre, where the evidence showed his authority was limited to little more than overseeing the daily activities of the employees. "For example, he disciplines and reprimands employees, initially interviews job applicants, although the final decisions on hiring and firing are made by Interboro, and prepares and submits vacation schedules for approval by Interboro. It appears, therefore, that instead of being in a decision making position, the 'manager' has little or no authority on labor policy but is subject to detailed instructions from the central office." The court, for these reasons, denied enforcement.

In N.L.R.B. v. Davis Cafeteria, Inc., 396 F.2d 18, 21 (C.A.5, 1968), the Board found that the appropriate unit included only two of the eight cafeterias in the Miami area which were in the employer's administrative district. The court denied enforcement, saying:

> "In the circumstances of this case, labor policy is centrally determined, and where local managers do not have authority to decide questions which would be subjects of collective bargaining, the two respondent cafeterias do not constitute an appropriate bargaining unit."

In N.L.R.B. v. Purity Food Stores, Inc., 376 F.2d 497, 501 (C.A.1, 1967), the Board conducted an election of only one store out of seven within a 30-mile radius of the central office of Chelmsford, Massachusetts, and certified the Union as the bargaining agent for that unit. The evidence showed central control of operation and of labor relations, and the court found that there were no more than a few miles of physical separation between the bargaining unit, which the Board had determined, and another store, and the "consequent" separation of a few ministerial duties, saying this was far from enough. Moreover, the court stated as a principle of law, governing the Board's determination of bargaining units, that it was required to "articulate substantial reasons for its unit determination," and that an employer was entitled to "reasonably adequate protection from the 'disruptive effects of piecemeal unionization.' "

◼ We look to the Board's own recognition of its discretionary limitations in determining the appropriateness of a bargaining unit. In Kalamazoo Paper Box Corp., 136 NLRB 134 (1962), the Board said:

> " * * * Because the scope of the unit is basic to and permeates the whole of the collective bargaining relationship, *each unit determination, in order to further effective expression of the statutory purpose, must have a direct relevancy to the circumstances within which collective bargaining is to take place. For, if the unit determination fails to relate to the factual situation with which the parties must deal, efficient and stable collective bargaining is undermined rather than fostered.*" (136 NLRB at 137)

The Board further said that an erroneous decision with respect to the scope of a bargaining unit:

> " * * * would result in creating a fictional mold within which the parties would be required to force their bargaining relationship. Such a determination could only create a state of chaos rather than foster stable collective bargaining and could hardly be said to 'assure to employees the fullest freedom in exercising the rights guaranteed by this Act' as contemplated by Section 9(b)." (136 NLRB at 139)

In N.L.R.B. v. Pioneer Natural Gas Company, 397 F.2d 573, 576 (C.A.5, 1968), the court said:

> "We are mindful that our review of the Board's unit determination is narrowly limited * * * but nevertheless conclude that *where the Board makes an unexplained departure from its established criteria for unit determination we should deny enforcement * * *.*" (Emphasis supplied.)

The Board has found in many cases that District-wide units of Respondent company have constituted the appropriate units for collective bargaining. It appears that the Detroit District Office

was found by the Board (once in a certification case, and once in a decertification case) to be the appropriate bargaining unit; that the Grand Rapids District Office was agreed by the parties to be the appropriate unit; that the Cleveland District Office was found to be the appropriate bargaining unit; and that the history of Company-Union collective bargaining has been almost always on a District Office-wide basis, such as the Portland District, as well as the Districts of Los Angeles, San Francisco, Louisville, New York City, Boston, and Chicago.

An examination of the record discloses that the supervision of the Columbus District Office over all guard operations in the District is a close supervision; that wages, hours, and working conditions are uniform throughout the District and that guards are sometimes interchanged in the District.

Mr. Jerald L. Westfall testified that, as Columbus Office Manager, he was in charge of the whole operation in the Columbus District. The Columbus District Office is divided into two departments: namely, investigation and security. Under the Manager are two Assistant Managers in charge of the two departments. Supervisory personnel assigned to and working out of the Columbus District Office, who assist Mr. Westfall in the security (guard force) department, include Mr. L. D. Muncy, Assistant Manager of Security, and Mr. R. E. Murphy, Supervisor of Security.

Mr. Westfall testified that Mr. Murphy was Supervisor over all security operations out of the Columbus District Office and his jurisdiction included all the area within the District Administrative unit; and that Mr. Muncy's jurisdiction to perform supervisory duties extended throughout the Columbus District. Assisting Mr. Murphy are four field captains: namely, Captain Wahlford in Columbus, Captain Martin in Marion, Captain Wetherill in Mt. Vernon and Captain Johnson in Huntington. Going down the chain of command, the field lieutenants come after the field captains.

In the Columbus District, there are seven field lieutenants located in Mansfield, Marietta, Charleston, Columbus, Springfield, Piqua and Mt. Vernon.

The Columbus District Office maintains a close supervision over all guard operations in the District, as is shown by the fact that Mr. Murphy two or three times a month inspected the unit the Board found to be appropriate. Also, Mr. Westfall inspected the same area on two different occasions in a period of four or five months.

In Weiss Markets, Inc., 142 N.L.R.B. 708, 710, with specific reference to the contention that there had been a change in the policy of the Board, the Board said:

"It has long been the policy of the Board to find that the appropriate bargaining unit in retail chain operations could embrace the employees of all stores within the employer's administrative or geographical area. The Employer's contention that the Board's decision in *Sav-On Drugs, Inc.,* abandoned that rule is without merit. In that case the Board stated that it would apply to *retail chain operations* the same unit policy which it applies to multi-plant location generally, and it had merely '*added the possibility* \* \* *that a single location or a grouping other than an administrative or geographical area may be appropriate.*'" (Emphasis supplied.)

We also must consider in this case a factor not especially emphasized. This Respondent does not conduct a business similar to a chain of stores or theatres, or an industrial enterprise. It consists of the maintenance of detectives and security guards for businesses operated by individuals, partnerships or corporations. Its business in any location in any district can be terminated by the company which contracted for its services, and the employees of the company at such a place go elsewhere, and the organization may suddenly disappear for good from that location. A strike at one location would probably result in the loss of Respondent's contract for ser-

vices at that location and, in this, it is obviously in a different position than a chain store, or a segment of, or, an entire industrial enterprise, which, even if it were hampered or even closed by a labor dispute, would continue or reopen upon the settlement of the dispute. This is mentioned, not as a controlling factor, but one having a direct and important relevancy to the circumstances within which collective bargaining is to take place; and if the unit determination fails to relate to the factual situation with which the parties must deal, efficient and stable bargaining is undermined, rather than fostered, and could create a state of chaos rather than stable collective bargaining.

The Board contends for support of the finding of the Regional Director in which he declares that "the record reflects that the employees working in the three-city Mansfield area comprise a cohesive grouping with interests, separate and apart from employees in other areas," and that these separate interests of the Mansfield-area guards amounted to the place of residence, place of assignment without interchange, and common supervision. However, as Respondent points out, the real objective of the Act is to achieve stable collective bargaining; and insofar as the subject matters of collective bargaining are concerned—rates of pay, wages, hours of employment, fringe benefits, and other conditions of employment—all of the guards in the entire Columbus District have a common interest.

■■ It is to be remarked, in the light of the accompanying opinion, that one of the controlling factors in deciding whether the Board's determination that a single segment of a larger group is an appropriate unit for collective bargaining, is the question of where the labor policy for the entire group is determined—whether it is centrally determined by the company, or by a local manager. In N.L.R.B. v. Davis Cafeteria, Inc., *supra,* it was held that, under the circumstances of that case, the local unit

did not constitute an appropriate bargaining unit; and in N.L.R.B. v. Solis Theatre Corp., *supra,* where a corporation owned and controlled a chain of fifteen other incorporated theatres, and it appeared that the owning corporation was the center of operations for the whole circuit of the other theatres, taking care of purchasing, bookkeeping, and advertising; setting admission prices, and schedules; performing the entire clerical work including the payment of bills and handling of payrolls; and setting a single labor policy for the entire circuit, resulting in similar wages, hours, and working conditions for its employees, the Board's decision that a single theatre, among the fifteen others, was an appropriate bargaining representative, was held by the court not to be supported by substantial evidence and to be unreasonable and arbitrary. These cases stand for the plain proposition that what an appropriate bargaining unit may be, depends not upon the desires of the employees of the particular unit, or upon the determination of the Board in selecting that unit in accordance with the expressed wishes, or vote, of the employees of such a unit.

From the foregoing, certain controlling principles appear:

■ Where labor policy is centrally determined, and where a manager of a local unit does not have authority to decide questions of collective bargaining, such a local unit does not constitute an appropriate bargaining unit.

■ Where only a few miles of physical separation exist between parts of an organization, with no consequent division of substantial ministerial responsibilities, the fact that there is no division of such ministerial responsibilities is enough to justify the conclusion that one of these parts of the organization is not an appropriate bargaining agent.

■ The Board in determining a proper unit for collective bargaining is required to articulate substantial reasons for its unit determination.

An employer is entitled to a reasonably adequate protection from the results of piecemeal unionization.

We are of the opinion that the Board went too far in concluding, on the basis of geographical location, that an appropriate bargaining unit consisted of the Mansfield-area guards on the ground that it was a cohesive grouping, with interests, separate and apart from guards in other areas of the Columbus District, and that such interests consisted of their place of residence, place of assignment, and common supervision. The Columbus District Office negotiates all contracts with clients in its administrative unit, and such contracts establish the working hours of the guards. Thus, wage rates are set in the Columbus District Office and are uniform throughout the administrative unit. Subsequent wage increases are determined by the Columbus District Office, and all time sheets are mailed to Columbus, from which paychecks are prepared in Columbus and mailed directly to the employees. While vacation schedules are prepared by the field officers, they must be submitted to the Columbus District Office for approval. Life insurance coverage and a deferred profit-sharing plan are provided uniformly to all employees in the District. Leaves of absence are granted by the Columbus District Office only.

The fact that some detail of inspection or supervision is in the hands of a local field lieutenant or supervisor is not justification to find that the guards employed in the area of such local supervisor constitute a bargaining unit. The primary supervisory functions performed by the field lieutenants located in the Mansfield area, here in question, and the other six field lieutenants in other areas of the District are the scheduling of the guards' work and inspection. The inspection consists of seeing that the guards' uniforms are clean and neat and that the guards cover their assigned duties as set forth in the Company's contract with the client. If a guard is absent, the lieutenant in charge either assigns another guard or takes over the position himself until he can get another guard. The Company has part-time guards available to fill in on an emergency basis. The hours that guard service is to be furnished is set by the contract between the Company and the client, which is negotiated by the Columbus District Office.

The lieutenant in charge of the Mansfield-area guards keeps no records except the schedule of hours the men are to be on the job. He would report to Columbus any complaint or grievance of an individual guard. He carries no equipment himself, not even an extra shirt, to furnish to a guard. Any complaint by a client as to the performance of a guard is reported by the lieutenant in charge to Columbus, and the matter is then handled by the Columbus office. If a guard's performance is inadequate, the lieutenant reports the facts to Mr. Murphy of the Columbus office, who makes the decision whether or not to terminate the services of the guard.

The lieutenant interviews men for employment. After completing the interview, the application is sent to Columbus, where the actual hiring is done. The lieutenant cannot forward to Columbus the application of an applicant who has a police record. That policy is set in Columbus. Likewise, Company regulations prevent his forwarding to Columbus the application of men with a poor work record. That policy is also set in Columbus. He cannot forward the application of an applicant for full-time employment if the applicant is over 65 years of age. That policy is set in Columbus. If Columbus approves an applicant for employment, the lieutenant either trains the new guard himself or has an experienced guard train the new employee in accordance with an instruction program provided by the Columbus District Office. The starting rate for new guards is set in Columbus. The lieutenant cannot grant wage increases and does not know the wages of the men he supervises. That is handled in Columbus. Leaves of absence and vacation schedules are arranged in Columbus.

Lieutenant Dasher testified that the guards know their routine of assignment, and he "hardly ever has to tell them where they are going because it is set on a permanent basis there except in emergencies." Any change in the permanent schedule of a guard is subject to the approval of Mr. Murphy, the supervisor of security. Mr. Murphy visits the territory supervised by the lieutenant of the Mansfield area at least two or three times a month; and, in addition, Mr. Westfall, the District Manager, had made at least two secret inspections during the four-month period during which the lieutenant had been stationed in the Mansfield area.

The evidence of substantial supervision from the Columbus Office was unquestioned. Place of residence and place of assignment are not substantial interests as compared with the important interests of employees as far as collective bargaining is concerned, and which consist of rates of pay, wages, fringe benefits, and other working conditions in which all the guards of the entire Columbus District have a common interest, and which are uniform through the District.

Other questions [1] advanced in the briefs and arguments are, in our view, unnecessary to decision.

In accordance with the foregoing, we are of the view that the collective bargaining unit determined by the Board was, under the circumstances of this case, not an appropriate bargaining unit, and was an unjustified determination and that, therefore, the petition for the order of enforcement is denied.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. I do not disagree with the basic principles enunciated in the majority opinion. The majority recognizes that section 9(b), 29 U.S.C. Sec. 159(b), vests authority for determining appropriate bargaining units in the Board and that Board determinations should be disturbed only if they constitute an abuse of discretion. N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750, 755–756 (6th Cir. 1965). Also, the majority properly acknowledges that an employer's form of organization cannot compel employees to organize along similar lines. State Farm Mutual Automobile Ins. Co. v. N.L.R.B., 411 F.2d 356 (7th Cir. 1969).

I disagree, however, with the majority's application of these principles in reaching its decision in the present case. Despite its statement that a bargaining unit does not have to parallel an employer's managerial arrangement in order to be appropriate for the purposes of collective bargaining, the majority concludes that the unit designated by the Board is inappropriate primarily because of respondent's central determination of labor policy, the close supervision emanating from the Columbus office, and the uniformity of working conditions throughout the district. Yet, each of these factors reflects a decision of management about the most efficient form of organization for the company. To ascribe controlling importance to them is contrary to the proposition that the interests of employees, not the convenience of the employer, are paramount in deciding whether a proposed bargaining unit

---

1. With regard to the statements made by the company during the first representation election, mentioned in the accompanying opinion, our conclusions make unnecessary the discussion of such election campaign statements. However, the Regional Director, although setting aside the election and ordering a new election, basing his decision on the fear which was allegedly generated by the statements made in the employer's letters and talks to its employees, dismissed objections to the falsity of such statements, saying that "to the extent that the objections referred to misrepresentations, they are without merit." On the subject of the protection afforded such communications by Section 8(c) of the Act, as well as the constitutional safeguards, see Linn v. United Plant Guard Workers of America, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582; N.L.R.B. v. TRW-Semiconductors, Inc., 385 F.2d 753 (C.A. 9); N.L.R.B. v. Hawthorn Co., 404 F.2d 1205 (C.A. 8); N.L.R.B. v. River Togs, Inc., 382 F.2d 198 (C.A. 5).

is appropriate. *See* N.L.R.B. v. Western and Southern Life Ins. Co., 391 F.2d 119, 123 (3rd Cir. 1968).

The Regional Director decided the proposed unit was appropriate because:

> the employees working in the three-city Mansfield area comprise a cohesive grouping with interests separate and apart from employees in other areas * * *. [T]hey all reside in the Mansfield area, all are under the immediate supervision of field [supervisor] Dasher, are subject to assignment only to installations within the area, and do not interchange with employees from different areas.

Moreover, at the time the representation petition was filed, there were no other petitions requesting a larger bargaining unit before the Regional Director.

I would hold that the Regional Director's factual conclusions are supported by the record and that they provide ample support for the Board's approval of the proposed three-city unit. Although a larger bargaining unit may have been more suitable, a reviewing court is concerned only with whether the unit designated is *an* appropriate unit and not with whether it is *the* appropriate unit. State Farm Mutual Automobile Ins. Co. v. N.L.R.B., *supra*, 411 F.2d at 358.

Since I would hold that the Board did not abuse its discretion by determining that the proposed unit was appropriate, I find it necessary also to comment on respondent's contention that the first representation election, which the union lost by a vote of 16 to 11, was valid.

After the Regional Director's Decision and Direction of Election in the proposed three-city unit, but prior to the election itself, respondent circulated three letters to the employees in the unit. In these letters respondent asserted, *inter alia,* that the union was interested only in the dues it could collect from the employees if they chose the union; that

unionization would result in a loss of clients and consequent loss of jobs, particularly if the union ordered a strike; and that the benefits of unionization would be postponed for at least two years because respondent would initiate protracted litigation and would suspend all wage increases and changes in working conditions pending the outcome of the litigation. The union filed objections to the election pursuant to section 102.69(a) of the Board's Rules and Regulations, 29 C.F.R. § 102.69(a), charging that respondent's letters had destroyed the "laboratory conditions" the Board seeks to maintain during representation elections. *See* N.L.R.B. v. Houston Chronicle Publishing Co., 300 F.2d 273, 278 (5th Cir. 1962). The Regional Director, after conducting an investigation, sustained the union's objections and ordered a second election. The union won the second election by a vote of 13 to 11 and was certified as the employees' exclusive bargaining representative.

I would hold that the Regional Director properly concluded that the requisite laboratory conditions were impaired by respondent's correspondence and that he did not abuse his discretion in sustaining the union's objections and ordering a new election. *See* Neuhoff Bros., Packers, Inc. v. N.L.R.B., 362 F.2d 611, 614 (5th Cir. 1966). "It is not necessary that conduct which interferes with the freedom of choice in an election actually constitute an unfair labor practice" in order to justify setting aside the election. N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172, 181 (6th Cir. 1967). Moreover, section 8(c), 29 U.S.C. Sec. 158(c), does not afford protection to this kind of expression. N.L.R.B. v. Realist, Inc., 328 F.2d 840 (7th Cir. 1964).

Accordingly, I would hold that the three-city unit is appropriate and that the union's election victory and certification are valid. I would enforce the Board's order.