**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WOLVERINE WORLD WIDE, INC., Respondent.**

No. 72–1944.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1973.

Decided May 23, 1973.

Jerome H. Brooks, Director, Region 7, N. L. R. B., Detroit, Mich., Howard Kaufman, N. L. R. B., for petitioner-appellant; Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Abigail Cooley Baskir, Attys., N. L. R. B., Washington, D. C., on brief.

Peter A. Patterson, Grand Rapids, Mich., for respondent-appellee; Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., on brief.

Before PECK, MILLER and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

From the beginning of these proceedings the Respondent, Wolverine, has insisted that its distribution center located in Rockford, Michigan is not an appropriate bargaining unit under Section 9 (b) of the National Labor Relations Act, as amended, 29 U.S.C. § 159(b). Wolverine has maintained throughout the proceedings that all manufacturing operations of the company in the State of Michigan should be included as one bargaining unit. The unit thus contended for by the Respondent would include facilities in Grand Rapids, Ithaca, Greenville, Big Rapids and Reed City, Michigan as well as in Rockford. Together these facilities constitute the Hush Puppies/Wolverine/Ski Products Division of Wolverine World Wide, Inc. At the hearing held pursuant to Section 9(c) of the Act to determine an appropriate unit, Wolverine presented a number of officers of the Division who testified concerning its organization and methods of operation. It was stipulated that the distribution center at Rockford had approximately 100 eligible employees. The function of the distribution center was to receive shoes produced at the various plants of the Division, store them until orders were received, and then ship them to customers. At the time of the hearing, one manufacturing operation was being carried on at the distribution center. This involved stitching the soles on shoes which came to the center with soles cemented and unstitched. This manufacturing operation was scheduled for removal from the distribution center.

Testimony showed that company production schedules were prepared weekly in the central office and distributed to the various plant managers who then had the responsibility of calling in or laying off employees to meet the schedule. The distribution center was managed by a superintendent who reported directly to the manager of warehousing. The manager of warehousing testified that each unit manager under him had more or less autonomous control of his unit, subject to his overall supervision. The unit manager of the distribution center had the authority to hire and fire, subject to review, and using the facilities of the central personnel office of the Company. The manager of warehousing testified that it would be "a strange set of circumstances if he would overrule the decision of a unit manager to let an employee go," and that, in fact, he had never overruled a decision to fire a man.

The employment manager of Wolverine testified concerning the corporate organization for labor and employee relations and the various rules and guidelines in force throughout the company. He also described the procedures for transfer of employees between various facilities, and a number of fringe benefits available to employees throughout the company. An employee handbook was introduced which he testified generally governs the policies, practices, procedures, rules and regulations concerning employees of the corporation in all of its divisions. The testimony of this witness confirmed that the local unit manager made the decisions on hiring, firing, and disciplining of employees and that staff officers only made recommendations. The testimony developed that similar procedures were followed with respect to transfers, leaves of absence, promotions, overtime and pay adjustments. In all of these matters the Company promulgated general guidelines and regulations, but each individual unit manager possessed a significant degree of discretion in matters affecting employees. From the entire record it is evident that the individual facility managers had authority beyond the mere power to implement centrally formulated policies.

■ In NLRB v. Pinkerton's, Inc., 428 F.2d 479 (6th Cir. 1970), while over-

turning a unit determination made by the Board, this Court affirmed the principle that the Board's decision on whether a given unit is appropriate will not be disturbed except for an abuse of discretion or violation of the statute. In that opinion, at pages 484 and 485, there are set forth four controlling principles by which the Board is bound in making a unit determination. The Respondent in this case particularly stresses the fact that its labor policy is centrally determined, which is one of the principles referred to in *Pinkerton's*. Although there is evidence of centrally determined labor policies, the Board was justified in finding that the individual unit managers of Wolverine, while operating within company guidelines, maintained individual initiative in a number of personnel areas and had final responsibility in matters of critical importance to employees. The Board was also justified in finding from the record that there is substantial geographic separation between some of the plants and only minimal interchange of employees among the various facilities. There was no recent collective bargaining history from which to determine whether a local unit manager would have authority in collective bargaining.

■ We conclude that the Board has articulated " . . . substantial reasons for its unit determination" and that this determination does not unreasonably deny the Respondent "adequate protection from the results of piecemeal unionization." 428 F.2d at 484–485. See also Michigan Hospital Service Corporation v. NLRB, 472 F.2d 293 (6th Cir. 1972). Upon consideration of the entire record it is clear that the Board did not abuse its discretion in designating the distribution center as an appropriate bargaining unit. NLRB v. American Life & Accident Insurance Co. of Kentucky, 394 F.2d 616 (6th Cir.) cert. denied 393 U.S. 913, 89 S.Ct. 237, 21 L.Ed.2d 199 (1968).

In its order finding that the distribution center in Rockford, Michigan was an appropriate unit for the purpose of collective bargaining, the Board, through its regional director, ordered an election which was held on January 26, 1971. Seventy-five eligible employees out of a total eligibility list of 105 voted on that date. One union received 38 votes, with 35 being cast for no union and two votes for another union. The Respondent filed objections to the election based on the fact that " . . . the Rockford, Michigan area was beset at that time with severe weather conditions approaching blizzard or near blizzard proportions." It was alleged that the failure of 28.5 per cent of the eligible employees to vote in an election decided by three votes, in view of the severe weather conditions, required the rescheduling of the election. Affidavits verifying the weather conditions in the Rockford area were filed with the objections. No affidavit from any employee stating that he or she was prevented from voting by reason of the weather on the day of the election was filed by Wolverine. No hearing was held on the objections to the election, and the regional director issued a supplemental decision overruling the objections and certifying the results of the election.

On appeal the Respondent argues that the Board erred in failing to conduct hearings on its objections to the election. There is no statutory requirement that hearings be held, but the Board's Rules and Regulations do provide for a hearing " . . . if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, . . .." 29 C.F.R. § 102.69 (c). Only one case was cited concerning the effect of weather conditions on the validity of a labor election. In Red Wing Potteries, Inc., 88 NLRB 1234 (1950), the Board held that inclement weather was not a sufficient reason to set aside an election; however, in that case 91 per cent of the eligible voters did cast ballots. In the present case only 71.5 per cent of the eligible employees voted, but the information submitted with the objections failed to show a direct causal relationship between the weather conditions and the failure of

nearly 30 per cent of the eligible voters to participate in the election.

 The question presented is whether the Respondent, by its objections, disclosed the existence of substantial and material factual issues. Respondent states that the requirement of the Board Rules that reasons for objections consist of a short statement to be filed within five days precluded it from conducting a full-scale investigation and presenting detailed evidence. However, it contends that the objections and affidavits did raise substantial and material factual issues which could only be resolved at a hearing which would develop all of the evidence available. The extent of the administrative investigation conducted by the regional director as a result of the objections filed by Respondent is not disclosed in the record. The regional director found that *Red Wing Potteries, Inc., supra,* was dispositive of the issue. Since *Red Wing* involved the failure of nine per cent of the eligible voters to participate and this case involves a failure of 28.5 per cent to do so, there is a substantial difference between the cases. We do not agree that *Red Wing Potteries, Inc., supra,* is dispositive of this case, since it is conceivable that a party could make a showing that weather conditions have caused an otherwise valid election to be non-representative. Nevertheless, in order to require a hearing the objecting party must show what evidence will be introduced to support its contentions and not merely rely on inferences as Respondent did in this case. NLRB v. Louisville Chair Co., 385 F.2d 922 (6th Cir. 1967), cert. denied 390 U.S. 1013, 88 S.Ct. 1264, 20 L.Ed.2d 163 (1968); NLRB v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172 (6th Cir.) cert. denied 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Wide discretion has been entrusted to the Board in its supervision of elections and we do not find an abuse of this discretion in failing to conduct hearings on the objections filed by the Respondent.

Sometime after the election, the union filed a number of charges of unfair labor practices including refusal to bargain. The Trial Examiner found in favor of the union on all of these charges and recommended an Order which was adopted by the Board. The Board's Decision and Order is reported at 197 NLRB No. 11. The Order of the Board is supported by substantial evidence and enforcement is hereby granted.