**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MERCY HOSPITALS OF SACRAMENTO, INC., Respondent.**

No. 76–3579.

United States Court of Appeals, Ninth Circuit.

June 12, 1978.

As Amended July 3, 1978.

Rehearing Denied Aug. 25, 1978.

Certiorari Denied Feb. 21, 1979. See 99 S.Ct. 1221.

Paul J. Spielberg (argued), Washington, D. C., for petitioner.

Michael B. Roger (argued), of Van Bourg, Allen, Weinberg, Williams & Roger, San Francisco, Cal., for respondent.

Before SNEED and TANG, Circuit Judges, and ORRICK *, District Judge.

TANG, Circuit Judge:

The National Labor Relations Board (Board) seeks enforcement of its order, published at 224 N.L.R.B. 419, ordering Mercy Hospitals of Sacramento, Inc. (Mercy) to bargain collectively on request with Local 250, Hospital and Institutional Workers Union, SEIU, AFL–CIO (Union), to cease and desist from interfering with its employees in the exercise of their statutory rights, and to post notices. This court has jurisdiction pursuant to § 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq.

I.

On August 26, 1974, the Act was amended to cover persons employed at health care institutions, including non-profit hospitals,

---

* Hon. William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

Pub.L. 93–360, 88 Stat. 395 (1974). On that same day, the Union filed with the Board four petitions for representation elections, seeking certification as the bargaining representative for two separate employee units at each of Mercy's two locations. Representation hearings were held to determine the appropriate bargaining units. Three other labor organizations intervened in those hearings.

The parties stipulated to a service-and-maintenance unit and an all-clerical unit and to the classifications of employees in each of these units. The parties disagreed as to whether there should be separate units at each geographical location or an employer-wide set of units. After the hearings, the Regional Director issued a decision and direction of elections on December 10, 1974, finding that the proper geographical scope was employer-wide, and accepting the stipulation as to the composition of the units. The Union filed a request for review.

The Union and one of the intervenors, Local 39, International Union of Operating Engineers, AFL–CIO (Local 39), then requested that they be allowed to appear on the ballot as joint petitioner and offered to withdraw the request for review of the unit determination if the joint petitioner request were granted. Mercy opposed the request for joint petitioner as improper and untimely.

The Board scheduled argument in this and five other related cases for January 27, 1975. The notice of hearing[1] stated that the Board was interested in hearing argument on appropriate units in the health industry, especially the appropriate units for clerical personnel. After hearing argument, the Board granted the Union's request for review, and stayed the election pending its decision.

On May 5, 1975, the Board issued its decision and rejected the all-clerical unit the parties had stipulated to. The Board was of the opinion that business office clericals should be in a bargaining unit separate from other clerical employees. The request of the Union and Local 39 to appear as joint petitioners was granted. The Union then withdrew its petition for election in the business office clerical unit.

On June 4, 1975, a representation election was held in the service-and-maintenance unit, which the Union won, 359 to 332 with six challenged ballots. Mercy filed objections, claiming that the Union had made misrepresentations which influenced the election, and that the Board had improperly granted the request of the Union and Local 39 to appear as joint petitioner. The Regional Director overruled the objections and certified the election results. Mercy requested Board review, which was denied October 23, 1975.

On October 28, 1975, the Union requested that Mercy bargain. Mercy refused. On December 10, 1975, the General Counsel issued a complaint, charging that Mercy's refusal to bargain violated § 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5). Mercy admitted its refusal to bargain but claimed that the Board's certification of the bargaining units was invalid because the unit stipulation had been rejected and because of the Union's pre-election conduct (the same conduct which had been challenged in the representation proceeding).

The Board issued its decision, published at 224 N.L.R.B. 419, on June 7, 1976. The Board found that all issues raised by Mercy were or could have been litigated in the underlying representation proceeding and that Mercy was in violation of the Act. The Board ordered Mercy to bargain with the Union on request, to cease and desist from interfering with the employees § 7 rights, and to post notices. The General

1. The Notice of Hearing stated, in pertinent part:

The Board is primarily interested in argument as to what unit or units would be appropriate in these cases involving the health care industry. In addition, the Board solicits views as to what unit or units should embrace the following classifications among others: (a) business office clericals; (b) other clericals, e. g., receptionists, switchboard and paging operators, admitting clerks, ward clerks, medical record clerks, laboratory clerks . . .

Counsel has brought the present action for enforcement.

## II.

There are two basic issues presented by this case: whether the Board's certification of the bargaining units was invalid because of the manner in which the Board dealt with the stipulation, and if not, whether the Board erred in refusing to overturn the election because of the Union's conduct.

### A.

■ It is well-settled that the Board has a large measure of discretion in determining appropriate bargaining units. *Packard Motor Car Co. v. N. L. R. B.,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *Pittsburgh Plate Glass Co. v. N. L. R. B.,* 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); *Atlas Hotels, Inc. v. N. L. R. B.,* 519 F.2d 1330 (9th Cir. 1975). The Board is not required to choose the most appropriate unit, only to choose a unit within the range of appropriate units, *Atlas Hotels, supra; N. L. R. B. v. Lerner Stores Corp.,* 506 F.2d 706 (9th Cir. 1974). The Board's decision in these matters will not be overturned unless there is an abuse of discretion, the Board acted in an arbitrary, unreasonable, or capricious fashion, or the unit is in violation of statute. *Packard Motor Car Co., supra; Atlas Hotels, supra; Lerner Stores, supra; Libbey-Owens-Ford Co. v. N. L. R. B.,* 495 F.2d 1195 (3rd Cir. 1974) *cert. denied,* 419 U.S. 998, 95 S.Ct. 313, 42 L.Ed.2d 272; *N. L. R. B. v. Wolverine World Wide Inc.,* 477 F.2d 969 (6th Cir. 1973).

■ However, when the parties stipulate to a bargaining unit, the Board's powers are circumscribed. The Board is bound by the stipulation unless the stipulation violates applicable statutes or settled Board policy. *N. L. R. B. v. Detective Intelligence Service Inc.,* 448 F.2d 1022 (9th Cir. 1971); *N. L. R. B. v. Tennessee Packers, Inc.,* 379 F.2d 172 (6th Cir. 1967); *Tidewater Oil Co. v. N. L. R. B.,* 358 F.2d 363 (2nd Cir. 1966). In those cases where the stipulation is ambiguous, the Board may interpret the stipulation, but the interpretation must be based on the intent of the parties. *Detective Intelligence Service Inc., supra; Tennessee Packers, Inc., supra.* The Board itself acknowledges that such stipulations are to be honored provided that they are approved by the Regional Director and they do not violate express statutory provisions or established Board policies. *The Tribune Co.,* 190 N.L.R.B. 398 (1971).

■ The Board contends that the practice of honoring stipulations is inapplicable in the circumstances presented here. First, the Board claims that when this case was decided the Board had not yet determined whether stipulations in the health care field would be given the same weight as stipulations in other areas. Second, the Board argues that even if stipulations in the health care field would be honored if they met the *Tribune Co.* standards, it was impossible for this stipulation to meet those standards because the Board had not yet formulated its policy on bargaining unit determinations. Finally, the Board appears to claim that acceptance of this stipulation would lead to an undue proliferation of bargaining units.

We find these arguments unpersuasive. We fail to see why the policy of accepting stipulations that meet the conditions set forth in the *Tribune Co.* should not apply to areas newly added to the Board's jurisdiction. The Board might decide to change the policy of accepting stipulations, or it might decide that the policy should not apply in the health care field. But either of these decisions would be a departure from the Board's conclusions in previous cases, and the Board is therefore obliged to set forth its reasoning in favor of the change in order to avoid the appearance of arbitrariness, *N. L. R. B. v. Metropolitan Life Ins. Co.,* 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). The Board has not done so, and we note that in a case subsequent to this one the Board has stated that it will accept such stipulations in the health care field, *Otis Hospital Inc.,* 219 N.L.R.B. 164 (1975).

The Board's second argument, that a stipulation could not meet the *Tribune Co.* standards until the Board had formulated its policy, is more troublesome. At first glance it would seem that it could not be determined if a stipulation violated Board policy until Board policy had been determined. However, this difficulty is more apparent than real, since "Board policy" is being used in two distinct senses.

As we read the Board's decision in this case, the Board was applying the community of interest doctrine to the hospital situation. The community of interest doctrine is the Board's method for determining appropriate bargaining units; it consists of examining and comparing a number of factors (e. g. similarity of work performed, similarity of scale of earnings and other benefits, similarity of qualifications and skills, etc.) so that employees may be grouped in bargaining units with other employees who have a community of interests and not grouped with employees without such a community of interests. *See N. L. R. B. v. Saint Francis College*, 562 F.2d 246, 249 (3rd Cir. 1977). The use of this doctrine is entirely proper in those cases where the appropriate bargaining unit is disputed. But the community of interest doctrine is insufficient to override the intent of the parties in making a stipulation; it is not one of the settled Board policies which justify a refusal to accept a stipulation. *Detective Intelligence Service Inc., supra; Tennessee Packers, Inc., supra; Tidewater Oil Co., supra.* Therefore, the Board's refusal to accept the stipulation here was arbitrary.

The Board is charged with the statutory duty of assuring employees the "fullest freedom in exercising the rights guaranteed by this Act" § 9(b); 29 U.S.C. § 159(b). It is possible that this stipulation would hinder the employees in the exercise of those rights, or would violate some other settled Board policy. As the Board notes, the legislative history of the health care amendments shows a special Congressional concern with the undue proliferation of bargaining units in the health care field. *See Memorial Hospital of Roxborough v. N. L. R. B.,* 545 F.2d 351, 361 (3rd Cir. 1976). The Board argues here that to accept this stipulation would effect such an undue proliferation. Were this to be so, the Board would be justified in rejecting the stipulation. However, we fail to see how accepting this stipulation would have that result. Both the stipulation and the Board's order set forth the same number of bargaining units. The difference between the Board's order and the stipulation was whether certain employees were allocated to one unit or another; not the creation of additional units.

There may be Board policies other than community of interest which would be violated by accepting this stipulation. The case is therefore remanded to the Board to reconsider this stipulation in light of Board policies other than the community of interest doctrine. Our function is not to determine the bargaining unit, merely to make plain what we see as the Board's error, *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976).

The Board further contends that, even if its action were arbitrary, Mercy should have asked for reconsideration of the bargaining unit determination before the election, and its failure to do so precludes this court from considering the matter. We agree that it might have been preferable if Mercy had moved for reconsideration, but the failure to do so is not fatal. The regulations, 29 C.F.R. §§ 102.48(d)(1) and 102.65(e)(1) [2] speak in discretionary, not manda-

---

2. 29 C.F.R. § 102.48(d)(1) states in pertinent part:

A party to a proceeding before the Board *may,* because of extraordinary circumstances, move for reconsideration, rehearing, or reopening of the record after the Board decision or order. (emphasis added).

29 C.F.R. § 102.65(e)(1) states in pertinent part:
A party to a proceeding *may,* because of extraordinary circumstances, move after the close of the hearing for reopening of the record, or move after the decision for reconsideration or rehearing, except that no motion for reconsideration or rehearing will be entertained pur-

tory terms. Further, 29 C.F.R. §§ 102.-48(d)(3) and 102.65(e)(3) state that such motions are not required in order to exhaust administrative remedies. Certain representations were made during the oral argument which lead us to believe that, under the peculiar circumstances of this case, making a motion for reconsideration would have been a futile act.

### B.

Given the view we have taken, it is unnecessary to discuss other possible errors in the Board's finding that the Union's conduct did not prevent a fair election.

Petition to enforce is denied and remanded.

suant to this paragraph by the regional director with respect to any matter which can be raised before the Board pursuant to any other section of the rules in this part, or by the Board with respect to any matter which could have been raised but was not raised before it pursuant to any other section of the rules of this part. (emphasis added).