**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**The WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Respondent.**

**No. 16621.**

United States Court of Appeals Third Circuit.

Argued Oct. 3, 1967.

Decided March 4, 1968.

Warren M. Davison, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Linda Sher, Attorney, N. L. R. B., on the brief), for petitioner.

John G. Wayman, Reed, Smith, Shaw & McClay, Pittsburgh, Pa. (W. D. Armour, Pittsburgh, Pa., Ithamar D. Weed, Cincinatti, Ohio, on the brief), for respondent.

Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

STALEY, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of its order requiring the Western and Southern Life Insurance Company (hereinafter "Company") to bargain with the certified bargaining representatives of the Company's debit insurance agents employed at two separate district offices. The Company's principal contention in refusing to bargain is that the Board's finding that the individual district offices are appropriate bargaining units is arbitrary and without substantial evidence, and is, in fact, based upon the extent of organization of the unit employees in violation of § 9(c) (5) of the Act, 29 U.S.C. § 159(c) (5) (1964). We have thoroughly reviewed the entire record in this case, and we conclude that the Board did not abuse its discretion; its decision was not controlled by the extent of organization, but was based on permissible criteria, and it established the appropriateness of the units.

This is the second time that this case has been before us. In January, 1962, the Insurance Workers International Union filed separate petitions for the Company's McKeesport and Wilkinsburg district offices in Western Pennsylvania. The cases were consolidated for hearing and the Board, two members dissenting, directed separate elections for each office. 138 NLRB 538 (1962). After the Union won the elections, the Company refused to bargain on the basis that the Board's unit determinations were invalid; but in the ensuing unfair labor practice proceeding, the Board ordered the Company to bargain with the Union. 142 N.L.R.B. 28 (1963). We granted enforcement of the Board's order in a per curiam opinion, 328 F.2d 891 (C.A.3, 1964), on the basis of our opinion in Metropolitan Life Ins. Co. v. N.L.R.B., 328 F.2d 820 (C.A.3, 1964). Thereafter, certiorari was granted by the Supreme Court which remanded the case to this court, 380 U.S. 523, 85 S.Ct. 1325, 14 L.Ed.2d 265 (1965), with instructions to

remand to the Board for further proceedings consistent with the opinion in N.L.R.B. v. Metropolitan Life Ins. Co. (Woonsocket), 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965).

On remand, the Board ordered the parties to file briefs directed to the unit issues of the case in the light of the Supreme Court's opinion in the Metropolitan (Woonsocket) case and the Board's supplemental decision issued on remand therein. There the Board held that it was not necessary to reopen the record since it could articulate its reasons for the unit determination in the unfair labor practice proceeding as well as it could in the representation proceeding. Similarly, the Board did not reopen the underlying representation proceeding in this case. The Company argues that the Board's refusal to reopen denied it due process and was contrary to the Supreme Court's order.

The controlling mandate in Metropolitan (Woonsocket) does not support the Company's position. There, the Supreme Court, emphasizing that the Board " * * must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it,' " noted:

> "Of course, the Board may articulate the basis of its order by reference to other decisions or its general policies laid down in its rules and its annual reports, reflecting its 'cumulative experience,' * * * so long as the basis of the Board's action, *in whatever manner the Board chooses to formulate it, meets the criteria for judicial review."* 380 U.S. at 443, note 6, 85 S.Ct. at 1064. (Emphasis supplied.)

■ The Board's detailed decision in this case certainly "meets the criteria for judicial review." Moreover, the Supreme Court's language in the above-quoted note indicates to us that the Court did not view it necessary for the Board to reopen the representation proceeding, but merely required the Board to provide the courts with a complete presentation of the Board's rationale and supporting evidence in making these unit determina-

tions. Here the Board has made such a presentation.

■ Moreover, it is difficult to perceive how the Company was prejudiced by the Board's refusal to reopen the representation proceeding. The Company presented a most complete and competent case at the original representation hearing, and its position there, i. e., that the district offices were not individually appropriate bargaining units, and that the appropriate unit would have been all the district offices in the Company's "Division E," or in Western Pennsylvania, or in the Pittsburgh Metropolitan Area, is precisely that advanced in its briefs to the Board on remand, and again in the appeal to this court. It is true that in the § 8(a) (5) proceeding, the Company offered proofs to show that the Board's unit determinations were based on the Union's "extent of organization" by showing that the Union solicited employees at other district offices in the Pittsburgh area prior to the time the Union petitioned for elections at the two offices certified by the Board. However, in reaching its Supplemental Decision, the Board considered the offers of proof as if they had been established, and still concluded that acceptance of this evidence would not have overturned the original unit determinations. We have done likewise. Thus there can be no prejudice on this basis, for the Company is availed of whatever benefit it would have obtained by proving the substance of its offers, without having had to produce the evidence.

■ Finding then that there is no defect in the procedure employed by the Board, we shall proceed to the central inquiry whether these unit determinations were proper. In our view, the issues whether the Board's decisions are supported by substantial evidence and whether the Board improperly allowed the "extent of organization" to control its decision are not divisible, but are controlled by the same evidence and considerations. As we held in Metropolitan Life Ins. Co. v. N.L.R.B., supra, " * * *

the effect of 9(c) (5) is to require the Board to determine whether a unit is in and of itself appropriate, apart from the extent to which the employees are organized." 328 F.2d at 825–826. Of course we agree that the Board must not be permitted to evade "§ 9(c) (5) by purporting to base its decision on other factors when in truth it has been controlled by the extent of employee organization." N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 412 (C.A.3, 1966). We find that the Board's decision, incorporating by reference the reasoning in its Supplemental Decision in Metropolitan (Woonsocket), 156 NLRB 1408 (1966), has not based these unit determinations on the extent of employee organization, but on permissible nonorganizational factors.

The record in the representation hearing clearly supports the Board's essential findings of fact. Each of the Company's district offices functions as an entirely autonomous unit vis-a-vis the other Company district offices.[1] There is virtually no interchange of employees between the district offices, no overlap of territories, nor any other type of communication or exchange between them. Under the strict hierarchy of authority established by the Company, the district office manager and his assistants function as the first line of management. Although their discretion is limited by the considerable final authority vested in their superior, the Division Superintendent, the Board drew a permissible conclusion from the record, including Company manuals, that the district managers have "considerable leeway within the broad outlines of company policy to implement" the Company's business program.

██ The Company argues that various less-than-statewide units, or its "Division E" which comprises virtually all of the offices in Pennsylvania, and some in Delaware, would be appropriate units, but that individual district offices were not appropriate. Suffice it to say that the units suggested by the Company, would also appear to be appropriate.

However, as we noted in Metropolitan, supra, applying the various permissible criteria, " * * * the Board could determine any number of appropriate units, comprising a given set of employees." 328 F.2d at 825. The only question before us is whether the instant district office units are appropriate, and we agree with the Board that they are appropriate.

Our inquiry would terminate at this point, were it not necessary under the peculiar circumstances of this case, to also determine whether or not the Board did not merely purport to rely on the factors indicating that individual district offices were appropriate units and instead relied on the extent to which the petitioning Union had succeeded in organizing the Company's employees. For our purposes, we take it as established that prior to the Union's petition for elections in the two district offices, the Union had attempted to organize four of the Company's district offices in the Pittsburgh area, but had only succeeded in the two offices herein involved.

██ In determining the effect of this showing, it is important to recognize that "The extent to which the Union failed to organize should not determine the appropriateness of the group it did organize. To hold, that because the Union failed to organize on a broader basis, the smaller unit petitioned for is inappropriate, would, be to penalize the Union for failing in an attempt to organize, which right is fundamental to the Act." Metropolitan, supra, 328 F.2d at 826. Of course, whether or not the petitioning Union was controlled by the extent of organization is not the issue. However, where it can be shown that a union has been campaigning in a broader area, and it subsequently petitions for only a smaller portion of the employer's employees, the Board should affirmatively indicate that its decision was not controlled by organization alone.

Here, coupled with the rationale of the decision of the Board in Metropolitan

1. We are not concerned here with the "detached" offices maintained at other places, which are controlled by district offices.

(Woonsocket), supra, incorporated in the Board's opinion by reference, we find that the Board has not violated the mandate of § 9(c) (5). We think the Board's policy of presumptively finding a single district office an appropriate unit accords well with the policy of the Act, embodied in §§ 7 and 9(b), which directs the Board to choose bargaining units that "assure to employees the fullest freedom in exercising the rights guaranteed by this Act." Obviously, the smaller the number of unit employees, the greater the importance of the individual employee and his vote.

However, the Company argues that the policy of the Act in fostering and stabilizing good industrial relations will not be promoted by this policy, because, inter alia, the Company is faced "with the absurd possibility of dealing with various unions in 236 different bargaining units." Of course, this view supposes that the only appropriate unit would be the single district office, and we have already indicated that groupings of such offices may well be found to be appropriate in other cases. However, that is not our case. The short answer is simply that the overriding policy of the Act is in favor of the interest in employees to be represented by a representative of their own choosing for the purposes of collective bargaining, and the Board was entitled to give this interest greater weight than that accorded to the employer in bargaining with the largest, and presumably most convenient possible unit. The fact that most elements of the Company's labor policy are controlled by the home office does not detract from this conclusion; aside from the fact that the district office unit is especially well equipped to deal with purely local grievances, there is nothing to prevent the local unit, or combined local units from negotiating directly with the home office.

Thus we find that the Board did not abuse its discretion in certifying the separate district offices herein involved, and did not give controlling weight to the extent to which the Union had organized the Company's employees. Moreover, we are satisfied that the Board has sufficiently articulated the reasons for its unit determinations in compliance with the Supreme Court's mandate in Metropolitan (Woonsocket).

An appropriate order may be submitted by the Board.