127 N.J. Super. 277 (1974)
317 A.2d 363
CEMETERY WORKERS AND GREENS ATTENDANTS UNION, LOCAL 365, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, AN UNINCORPORATED ASSOCIATION, PLAINTIFF-RESPONDENT,
v.
ROMAN CATHOLIC DIOCESE OF NEWARK, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1973.
Supplemental Memoranda Received January 2, 1974.
Decided March 21, 1974.
*278 Before Judges KOLOVSKY, FRITZ and CRANE.
Mr. Joseph A. Clarken, Jr. argued the cause for appellant (Messrs. Fox, Schackner, Neagle, Mastrangelo & Gassert, attorneys).
*279 Mr. Abraham L. Friedman argued the cause for respondent (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Emil Oxfeld, of counsel).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
Defendant Roman Catholic Diocese of Newark owns and operates seven cemeteries within the geographic limits of the Diocese. Plaintiff is a labor union representing production and maintenance employees of defendant at defendant's Holy Cross Cemetery in North Arlington, New Jersey. After the Regional Director of the National Labor Relations Board refused to assert jurisdiction and dismissed plaintiff's representation petition, plaintiff filed a verified complaint in the Chancery Division seeking a judgment requiring defendant to bargain collectively with it.
The matter came before the trial court on the adjourned return date of the order to show cause which issued on the filing of the complaint. Both counsel expressly disclaimed any need for oral testimony on the critical issue of whether the unit plaintiff allegedly represented was an appropriate unit for the purpose of collective bargaining. After hearing argument, the court resolved that issue in plaintiff's favor on the basis of a record consisting only of the verified complaint, defendant's answer and answering affidavit and interrogatories propounded by plaintiff and answered by defendant. An order was entered on October 24, 1972 adjudging that:
The following employees of defendant constitute a unit appropriate for the purposes of collective bargaining, to wit:
All production and maintenance employees, including grave diggers, mechanics, all machine operators, chauffeurs and greens keepers employed by the defendant in the conduct of the Holy Cross Cemetery at 340 Ridge Road, North Arlington, New Jersey, and excluding all office clerical employees, professional employees, guards and supervisors.
and directing that a secret ballot election be conducted among those employees by the New Jersey State Board of Mediation to determine whether or not they desired "to be represented for collective bargaining purposes" by plaintiff.
*280 After an application for a stay was denied, the election was held, with plaintiff being certified by the Mediation Board as having received a majority of the votes cast. The judgment entered on March 2, 1973 repeated the determination quoted above as to what constituted an appropriate bargaining unit, certified plaintiff as "the sole and exclusive bargaining representative of the employees" in that bargaining unit and directed defendant to "bargain with plaintiff as the sole and exclusive representative of its employees in the aforesaid bargaining unit."
Defendant appeals, contending that the trial court erred in concluding that defendant's production and maintenance employees at Holy Cross Cemetery constituted a "unit appropriate for the purposes of collective bargaining." Defendant argues that the proofs before the court do not support that conclusion. Defendant recognizes that "the test is not whether the unit sought is the most appropriate unit possible, but rather whether said unit is in fact an appropriate unit," Bowman, et al. v. Hackensack Hospital Assoc., 116 N.J. Super. 260, 277 (Ch. Div. 1971), but argues that the proofs mandated the inclusion in the unit of the production and maintenance employees at all seven cemeteries owned and operated by it in order for the unit to be in fact an appropriate unit for collective bargaining with defendant.
While decisions of the National Labor Relations Board (N.L.R.B.) and of the federal courts in cases arising under the Labor Management Relations Act of 1947, 29 U.S.C.A. sec. 141 et seq. are not binding when our courts are called upon to decide cases in the area of labor relations, Cooper v. Nutley Sun Printing Co., Inc., 36 N.J. 189, 200 (1961), we may properly look to those decisions for guidance in resolving questions arising in that area, and particularly the question of what constitutes an appropriate bargaining unit. This is true even in cases of employment which are expressly excluded from the jurisdiction of the N.L.R.B., e.g. employments in a non-profit hospital, see Johnson v. Christ Hospital, 84 N.J. Super. 541 (Ch. Div. 1964), aff'd *281 45 N.J. 108 (1965) and Bowman et al. v. Hackensack Hospital Assoc., 116 N.J. Super. 260 (Ch. Div. 1971).
It is even more desirable that we seek guidance from those decisions in cases where, as here, the controversy is within the jurisdiction of the N.L.R.B. but that Board, in the exercise of the discretion granted it and for reasons unrelated to the merits of the dispute, has refused to assert jurisdiction.
We may start with the analysis made in N.J.R.B. v. Metropolitan Life Insurance Company, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) of the applicable provisions of the Federal statute:
Section 9 (b) of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U.S.C. § 159 (b) (1958 ed.) provides:
"The Board shall decide in each case whether, in order to insure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *."
This broad delegation of authority, see Pittsburgh Glass Co. v. National Labor Relations Board [313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941)], was limited in 1947 by the enactment of § 9 (c) (5) of the Act, 61 Stat. 144, 29 U.S.C. § 159 (c) (5) (1958 ed.), which provides that "[i]n determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling."
Although it it clear that in passing this amendment Congress intended to overrule Board decisions where the unit determined could only be supported on the basis of the extent of organization, both the language and legislative history of § 9(c) (5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination. [380 U.S. at 441-442, 85 S.Ct. at 1063].
The federal cases involving review of N.L.R.B. decisions
recognize that in determining appropriate bargaining units "a wide discretion has been vested in the Board," N.L.R.B. v. Belcher Towing Co., 5 Cir.1960, 284 F.2d 118, 120, and that this court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. *282 N.L.R.B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456. [N.L.R.B. v. Davis Cafeteria, Inc., 396 F.2d 18, at 19-20 (5 Cir.1968)].
However, where the court finds that the Board's decision is not supported by substantial evidence, or fails to clearly articulate the basis of its determination as to an appropriate unit, cf. N.L.R.B. v. Metropolitan Life Insurance Co. supra, its order will not be enforced.
Further, an N.L.R.B. determination as to an appropriate unit will be deemed invalid where it appears that, contrary to the proscription of 29 U.S.C.A. sec. 159 (c) (5)  referred to in the quotation from N.L.R.B. v. Metropolitan Life Insurance Co., supra  the Board improperly allowed the extent of the employees organization to be controlling. Cf. N.L.R.B. v. Western and Southern Life Insurance Company, 391 F.2d 119, 121 (3 Cir.1968), cert. den. 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 439 (1968).
As noted in 48 Am. Jr.2d, Labor and Labor Relations, sec. 446, p. 326 (1970):
In applying [the statutory guide as to what constitutes an appropriate bargaining unit] the NLRB has traditionally looked to such factors as the community of interest among the employees sought to be represented; whether they comprise a homogeneous, identifiable, and distinct group; whether they are interchanged with other employees; the extent of common supervision; the previous history of bargaining; and the geographic proximity of various parts of the employer's operation.
* * * [B]ut the NLRB's decisions on appropriate bargaining units cannot be generalized, and no generalizations should be attempted. There may be more than one way in which employees of a given employer may appropriately be grouped for purposes of collective bargaining. Moreover, the NLRB is not bound by its statements in earlier cases as to the appropriateness of a particular bargaining unit. Prior NLRB unit determinations in other cases have precedential value only in the sense that they disclose facts that the NLRB has previously considered relevant.
Where the situation is one in which an employer has several plants, it has been held proper for the Board to include the maintenance and production employees in the separate *283 plants in a single bargaining unit "where labor policies are centrally adopted and there is similarity in wages, hours, working conditions and manufacturing processes." 48 Am. Jur.2d, supra, sec. 450, p. 329; Pittsburgh Plate Glass Co. v. National Labor R. Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); reh. den. 313 U.S. 599, 61 S.Ct. 1093, 85 L.Ed. 1551 (1941); Annotation, "Labor-Bargaining-Separate Plants," 12 A.L.R.3d 787 (1967).
However, in N.L.R.B. v. Western and Southern Life Insurance Company, 391 F.2d 119 (3 Cir.1968), cert. den. 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 439 (1968), upon which plaintiff places substantial reliance in its argument in this case, it was held that it was proper to include only the employees at one district office of a life insurance company in the bargaining unit where it appeared that:
Each of the Company's district offices functions as an entirely autonomous unit vis-a-vis the other Company district office. There is virtually no interchange of employees between the district offices, no overlap of territories, nor any other type of communication or exchange between them. Under the strict hierarchy of authority established by the Company, the district office manager and his assistants function as the first line of management. Although their discretion is limited by the considerable final authority vested in their superior, the Division Superintendent, the Board drew a permissible conclusion from the record, including Company manuals, that the district managers have "considerable leeway within the broad outlines of company policy to implement" the Company's business program. [391 F.2d at 122]
On this background, we turn to a consideration of the facts in this case and whether they support the trial court's determination  without an articulation of the reasons therefor  that "all production and maintenance employees * * * employed by the defendant in the conduct of the Holy Cross Cemetery, * * * North Arlington" constitute a unit appropriate for the purposes of collective bargaining.
As we have already noted, the parties expressly disclaimed any desire to offer oral testimony, plaintiff choosing to rely solely on the verified allegations of its complaint and *284 defendant's answer to interrogatories and defendant relying solely on the statements embodied in the affidavit of its Director of Cemeteries. Therefore we are not called upon to give deference to the findings of the trial judge since, in the absence of oral testimony, his findings could not have been "influenced by his opportunity to hear and see the witnesses and to have the `feel' of the case." State v. Johnson, 42 N.J. 146, 161 (1964).
The proofs relevant to the issue of what constituted an appropriate bargaining unit were limited to the following:
(1) The following statements in the affidavit made by defendant's Director of Cemeteries:
2. I am the Director of Cemeteries and charged with the responsibility of supervising all cemeteries owned and operated by the Roman Catholic Diocese of Newark and the Diocesan Cemetery Office is located in the Diocesan Chancery Building at #31 Mulberry Street, Newark, New Jersey.
3. The Roman Catholic Diocese of Newark owns and operates as a single corporate entity 7 cemeteries within its geographic limits, namely, (1) Gate of Heaven; (2) Holy Name; (3) St. Peter's; (4) Saint Gertrude's; (5) Holy Sepulchre; (6) Holy Cross and (7) Christ the King.
4. All conditions of employment at the 7 cemeteries for the classifications of employees mentioned in the Complaint are the same and are fixed by me in my capacity as Director of Cemeteries, including salaries, fringe benefits, hours and conditions of employment, rules, regulations and discipline. All such employees in the 7 cemeteries mentioned above are hired by the Roman Catholic Diocese of Newark and are paid by it.
5. Employees and equipment can be transferred from one cemetery to another if conditions require such transfers, and such transfers have occurred in the past.
(2) The statements in plaintiff's verified complaint that defendant
among other enterprises, owns and operates Holy Cross Cemetery at 340 Ridge Road, North Arlington, New Jersey, in the operation of which it employs approximately 58 employees who may be classified as production and maintenance employees, including grave diggers, mechanics, machine operators, chauffeurs and grounds keepers, excluding supervisors and all other categories;
*285 that plaintiff had been "designated by an overwhelming majority of the aforesaid group of employees of defendant at said Holy Cross Cemetery as their collective bargaining representative"; and that defendant had refused to recognize plaintiff as the collective bargaining representative of those employees.
(3) The following answer given by defendant to interrogatories asking the names and addresses of employees who had been transferred from one cemetery to another "since January 1, 1971":
None, because conditions did not require any such transfers during this period. Under defendant's policy such transfers would have been made, however, as often as necessary if conditions had required same.
The last quoted answer may be deemed to weaken the weight to be given to the statement made in paragraph 5 of the affidavit of defendant's Director of Cemeteries. But none of the other statements made in that affidavit were challenged by plaintiff.
The fact that the employees at the Holy Cross Cemetery in North Arlington have chosen plaintiff as their representative is not controlling although it is a factor to be considered. N.L.R.B. v. Metropolitan Life Insurance Company, supra. The only other factors furnishing any support for a holding that the employees at the Holy Cross Cemetery constitute an appropriate unit are the geographical separation of that cemetery from the other six owned and operated by defendant and the fact that, for a period of one and a half years, no employee has been transferred from one cemetery to another, this despite defendant's statement  which stands uncontradicted  that employees and equipment can be transferred from one cemetery to another.
However, in our view, those three factors taken together do not, in face of defendant's uncontradicted proofs, warrant or support a determination that the employees at *286 the Holy Cross Cemetery constitute an appropriate bargaining unit.
Defendant's proofs established that its cemeteries are operated and conducted as a single enterprise. All are supervised by a single Director of Cemeteries. Unlike the situation in N.L.R.B. v. Western and Southern Life Insurance Company, supra, on which plaintiff relies, none of the cemeteries functions as an autonomous unit vis-a-vis the other cemeteries. On the contrary, all are controlled and directed from a single office; and all conditions of employment, including salaries, fringe benefits, hours, and rules and regulations governing employees, are the same at all seven cemeteries.
In those circumstances, we conclude that the production and maintenance employees at all seven cemeteries have such a community of interest that a bargaining unit which does not include all those employees is not an appropriate unit for collective bargaining.
The judgment is reversed and judgment entered in favor of defendant. No costs to either party.