153 N.J. Super. 1 (1975)
378 A.2d 774
ABRAHAM SOMMER, PLAINTIFF-APPELLANT,
v.
JAMES A. KRIDEL, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1975.
Decided June 12, 1975.
*3 Before Judges HALPERN, CRAHAY and WOOD.
Mr. James A. Major argued the cause for appellant (Messrs. Major & Major, attorneys).
Mr. Steven J. Zaben argued the cause for respondent (Messrs. Boratto, Pennachio & Silverman, attorneys).
PER CURIAM.
This is a suit for rent by plaintiff landlord against defendant tenant claiming damages in the sum of $5,865, with interest and costs. Defendant counterclaimed for the return of $345 which represented one month's security deposit. The case was tried on a stipulation of facts,[1] *4 and without oral argument. Under these circumstances, the trial judge's decision is not entitled to any special deference since he saw no witnesses and had the same written record before him as we have on appeal. See State v. Johnson, 42 N.J. 146, 161 (1964); Cemetery Workers v. Roman Cath. *5 Diocese, Newark, 127 N.J. Super. 277, 284 (App. Div. 1974); certif. den. 65 N.J. 563 (1974).
The trial judge, applying what he termed "justice and fair dealing" and the modern trend of the law, dismissed plaintiff's complaint because (a) defendant's offer to surrender was unequivocal and that plaintiff was under a legal duty to reject it, hence his silence was an acceptance of the offer to surrender which, in turn, terminated the tenancy, and (b) plaintiff's failure to mitigate damages barred his right to relief. In addition, he dismissed defendant's counterclaim without stating his reasons for doing so.
This case typifies situations wherein courts must be careful not to permit hard cases, which create sympathy for a litigant, to make bad law. See the dissenting opinion of Justice Holmes in Northern Securities Co. v. United States, 193 U.S. 197, 400, 24 S.Ct. 436, 48 L.Ed. 679 (1904). We understand and are in complete accord with the modern approach and philosophy expressed by our Supreme Court in cases like Weintraub v. Krobatsch, 64 N.J. 445 (1974); Marini v. Ireland, 56 N.J. 130 (1970); Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969); Totten v. Gruzen, 52 N.J. 202 (1968), and Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965), which were relied on by the trial judge. But we are not here concerned with one who has misrepresented the condition of premises to be sold or rented, or has failed or refused to furnish agreed upon services to his tenant, or has installed defective equipment in premises demised or sold to another. Rather, we have a landlord who was prepared to comply fully with his lease agreement voluntarily made between the parties, and where the tenant was under no compulsion by reason of any housing shortage to make the lease.
We are not unsympathetic to defendant's plight resulting from his broken marriage plans, but we are not prepared to abrogate the law of contracts because of it. Admittedly, defendant breached the lease agreement with plaintiff. Therefore, if he is to be relieved from his obligations *6 under the lease, he has the burden of proving there has been a surrender by act and operation of law and that such has been accepted by plaintiff. N.J.S.A. 25:1-2. Concisely stated:
Whether there has been a surrender by operation of law depends on the intention of the parties to be deduced from their words and acts, and is ordinarily a question of fact for the jury. The burden of proof is on the party alleging the surrender, and where it is to be inferred from circumstances or conduct inconsistent with an intention to perform, the proof must be clear.
[Duncan Develop. Co. v. Duncan Hardware, 34 N.J. Super. 293, 300 (App. Div. 1955).]
On the record before us, we are unable to find that defendant carried this burden of proof. The evidence is to the contrary. The lease gave plaintiff the option to reenter and relet the demised premises in the event of defendant's default. It specifically provided that plaintiff's refusal to relet on default would not discharge defendant from paying rent due. In short, plaintiff was under no legal duty to mitigate damages by reletting the premises upon defendant's default.
We disagree with the trial judge's determination that plaintiff was under a legal duty to respond to defendant's letter of May 19, 1972 and, therefore, hold that his silence was not an acceptance of defendant's offer to surrender and terminate the lease. In fact, plaintiff's actions indicated a contrary intent. Following the breach, when a third party (presumably a friend of defendant's) asked to see, and offered to rent, the apartment leased to defendant, plaintiff refused to do so because it had been rented to defendant. Plaintiff did offer to show the third party other similar empty apartments available for rental, but presumably this person was not interested in any other apartment.
Nor are we able to agree with the trial judge that under the stipulated facts in this case plaintiff was under "a duty to rent the defendant's apartment to a third person who was ready, willing and able to lease it, and thereby *7 mitigate the damages for which the defendant would otherwise be liable under the terms of the lease. Plaintiff's failure to mitigate his damages therefore bars him from relief under settled principles of contract law." Firstly, the lease imposes no such duty on plaintiff  in fact, it relieves him from that obligation. Secondly, even if we were to assume the lease provision was for some reason against public policy, the equitable doctrine of mitigation of damages cuts both ways. Why should plaintiff be compelled to lease defendant's apartment in order to mitigate defendant's damages when he has other empty apartments being held for rent? We know of no sound reason, legal or equitable, why plaintiff should be required to suffer in order to mitigate defendant's damages.
The judgment below is modified, we leave undisturbed the dismissal of defendant's counterclaim from which no cross-appeal was taken. Judgment will be entered in favor of plaintiff and against defendant for $5,865 without interest.
NOTES
[1] OF FACTS
(Filed-May 29, 1974)
The parties to this litigation, by their attorneys, agree that the following are the facts to be considered by the court and from these facts the court is to determine the issue as a matter of law.
1. Plaintiff is the owner of an apartment house located in the City of Hackensack, Bergen County, New Jersey, at 185 Prospect Avenue known as The Pierre Apartments.
2. On March 10, 1972 defendant signed an agreement to lease apartment 6L on the sixth floor of said apartment house. The proposed term was to commence on May 1, 1972 and terminate on April 30, 1974.
3. Defendant on March 17, 1972 delivered to the plaintiff the sum of Six Hundred Ninety Dollars ($690.00); of that amount Three Hundred Forty-Five Dollars ($345.00) was allocated as security for deposit and Three Hundred Forty-Five Dollars ($345.00) as one months rent.
4. The lease in question is called "Standard Form of Apartment Lease" and will be submitted to the court for its perusal and marked Exhibit "A."
5. On May 19, 1972 defendant addressed a letter to plaintiff, copy of which is annexed hereto and marked as Exhibit "B."
6. The defendant has never physically possessed apartment 6L, never having physically occupied said apartment, nor having said apartment furnished with personal articles or furniture of any kind.
7. Plaintiff did not re-enter said apartment rented to defendant until on or about August 1, 1973, when it was re-rented at a rental of Three Hundred Forty-Five Dollars ($345.00) per month with a six week concession in rent at the start of the lease.
8. After the letter marked as Exhibit "B" was sent to and received by plaintiff, a third party visited at The Pierre Apartments, and this person asked the party in charge if she could see apartment 6L for the purpose of renting it. Such person, was ready, willing and able to rent said premises. She was informed that this apartment was not being shown because it was rented to a Mr. Kridel.
9. After the letter marked as Exhibit "B" was received, plaintiff exhibited for rental and did rent other apartments in The Pierre, but until August of 1973 plaintiff did not exhibit 6L to any person desiring rental in said apartment house, more particularly those persons desiring a similar apartment or apartment of like kind to that of apartment 6L.
[Exhibit A is a standard form of lease and its relevant terms will be referred to in this opinion.]
EXHIBIT B, ANNEXED TO STIPULATION OF FACTS
 May 19, 1972
 Mr. Abraham Sommer
 250 W. 57th St.
 New York, New York
Dear Mr. Sommer,
On March 10, 1972 I contracted to rent apartment 6L on the 6th floor of the Pierre Apartments, 185 Prospect Avenue, Hackensack, New Jersey, the term of lease beginning 5/1/72 and ending 4/30/74.
I was to be married on June 3, 1972. Unhappily the engagement was broken and the wedding plans cancelled. Both parents were to assume responsibility for the rent after our marriage. I was discharged from the U.S. Army in October 1971 and am now a student. I have no funds of my own, and am supported by my stepfather.
In view of the above, I cannot take possession of the apartment and am surrendering all rights to it. Never having received a key, I cannot return same to you.
I beg your understanding and compassion in releasing me from the lease, and will of course, in consideration there of, forfeit the 2 months rent already paid.
Please notify me at your earliest convenience.
 Very truly yours,
 James A. Kridel, Jr.