The **WAYNE OAKLAND BANK,**
Petitioner,

v.

The **NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 71–1639.

United States Court of Appeals,
Sixth Circuit.

June 29, 1972.

James D. Tracy, Detroit, Mich., James C. Barkley, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., on brief, for petitioner.

Frank Vogl, N. L. R. B., Washington, D. C., Peter G. Nash, Marcel Mallet-Prevost, Leonard M. Wagman, Washington, D. C., on brief, for respondent.

Before EDWARDS, PECK and KENT, Circuit Judges.

KENT, Circuit Judge.

In this appeal the Wayne Oakland Bank (Petitioner) seeks review of an order of the National Labor Relations

Board and the Board cross-appeals for enforcement of its order.[1] In essence the order of the Board requires the Petitioner to enter into collective bargaining with Local 10, Office and Professional Employees International Union, AFL–CIO.

Petitioner is engaged in the banking business in 13 locations, which include a main office, a drive-in facility adjacent to the main office, and 11 branch offices. All the business locations are within 25 miles of the main office. Petitioner employs approximately 400 people.

On December 8, 1970, the Union filed six separate petitions for representation elections seeking certification as the bargaining agent in various units of the Petitioner's operations. One petition related to the employees at the main office, another to the employees of the loan department, a third petition sought certification as the representative of the employees at the drive-in facilities, and the remaining petitions related to separate elections in each of three branch facilities. Petitioner opposed the separate representation elections and after a hearing the Regional Director entered a decision on February 22, 1971, finding that each location was an appropriate bargaining unit. Elections were held and the Union won only one of the six elections. It was certified as the representative of the 10 people employed at the Troy-Livernois Branch of the Petitioner. Petitioner employs approximately 350 salaried non-supervisory employees.

After the Petitioner refused to bargain on the ground that the Troy-Livernois Branch was not an appropriate unit the Board entered its order finding the Petitioner in violation of Sections 8(a) (1) and (5) of the Act, 29 U.S.C. § 151 et seq.

■ On petition for review the Petitioner admits its refusal to bargain, but claims that it has not committed an unfair labor practice because the Troy-Livernois Branch is not an appropriate bargaining unit within the meaning of Section 9(b) of the Act, which provides:

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

We recognize that Section 9(b) vests wide discretion in the Board and that a finding of an appropriate bargaining unit will not be disturbed unless it is arbitrary and amounts to an abuse of discretion. N. L. R. B. v. Lou De Young's Market Basket, Inc., 406 F.2d 17 (6th Cir. 1969). Accord: N. L. R. B. v. Pinkerton's, Inc., 428 F.2d 479 (6th Cir. 1970); N. L. R. B. v. Solis Theatre Corp., 403 F.2d 381 (2nd Cir. 1968); N. L. R. B. v. Davis Cafeteria, Inc., 396 F.2d 18 (5th Cir. 1968); N. L. R. B. v. Purity Food Stores, Inc., 376 F.2d 497 (1st Cir. 1967), cert. den. 389 U.S. 959, 88 S.Ct. 337, 19 L.Ed.2d 368 (1967).

■ Each of the cases which has considered the issue of the appropriateness of a bargaining unit has focused on the nature and extent of centralization of operations. The Courts have found that the important factors entering into the determination of such a unit are; First, the extent of the centralized control of the commercial and administrative aspects of the business and, Second, the extent of centralized control of labor policy. This second factor involves consideration of where matters subject to collective bargaining, such as wage and fringe benefits, are determined, i. e., whether the responsibility resides in the main office or with the branch supervisor. In addition consideration must be given to the extent of employee interchange between branches. The Courts have not hesitated to set aside a finding of the appropriateness of a branch as a bargaining unit where the evidence showed centralized control over

the principal aspects of operations and employee relations. N. L. R. B. v. Purity Food Stores, Inc., 376 F.2d 497 (1st Cir. 1967); N. L. R. B. v. Davis Cafeteria, Inc., 396 F.2d 18 (5th Cir. 1968); N. L. R. B. v. Solis Theatre Corp., 403 F.2d 381 (2nd Cir. 1968); N. L. R. B. v. Pinkerton's, Inc., 428 F.2d 479 (6th Cir. 1970).

The facts in this case as found by the Board do not support the Board's conclusion. As found by the Director: "The evidence thus reveals that with respect to the bank office functions of the Employer's banking operations, an integrated and structured flow of paper is maintained from, to, and through both the main office and the branch offices." App. pg. 200. The flow of paper, to which reference was made by the Board, relates to the uniform accounting procedures which make it possible for a bank customer to go to any branch office and obtain banking services, such as savings accounts, checking accounts, commercial loans and customer loans. An individual customer may take action in connection with such accounts at any office of the Petitioner without regard to where the account is nominally maintained and many bookkeeping functions necessary to the conduct of the Petitioner's business at its branches are performed only at the main office of the employer. As stated by the Director: "The integrated nature of the Employer's operations is not limited to the flow of paper necessary to maintain customer accounts nominally located at the various offices." App. pg. 200.

The Director also found with respect to the personnel policies: "The integrated nature of the Employer's operations is not limited to the banking transactions but also extends to personnel policies . . . . substantially all of the bank's employees work common hours. . . . . Wage levels and fringe benefits are centrally determined and administered. All hiring of personnel for both the main office and the branches is done by the central Personnel Department located in the main

office. Newly hired personnel are not hired for a specific location, but are assigned to the main office during their period of training. . . . The sizes of the employee complements at the branch offices and within the departments of the main office are centrally determined, as are permanent and temporary transfers." App. pgs. 201–203.

The Director concluded that there was no significant interchange or transfer of employees among the branches and main office by the Petitioner either on a permanent or temporary basis. This determination is not supported by substantial evidence. The record indicates to the contrary. Petitioner's Exhibit 2 reflects that there were 180 permanent transfers within a two-year period 81 of which were transfers other than reassignment upon completion of training. Contrary to the Director's finding that only five out of 55 permanent transfers related to the branches under consideration in the initial petitions, in reality there were 10 such permanent transfers or approximately 20%.

Contrary to the Director's findings the record discloses substantial employee interchange, some on a permanent basis and some on a temporary basis. As noted by the Court in N. L. R. B. v. Purity Food Stores, Inc., 376 F.2d 497, 500, 501 (1st Cir. 1967):

"It seems to us obvious that in view of the frequent interchange of employees from store to store, either permanently or for part-time work, only friction between employees and chaos in labor relations could possibly result if some employees were under union rules as to wages, hours, seniority, grievance procedures, etc. when the employees working beside them in the same category were not. The Board's conclusion to the contrary flies in the face of reality."

We find nothing in this record to sustain the Director's finding that any branch manager has substantial responsibility in relation to the substantive matters subject to collective bargain-

ing. In terms of personnel policy the independence of the branches is as stated in *Purity, supra,* at 501:

"[It] amounts to no more than a few miles of physical separation and the consequent division of a few ministerial responsibilities. This is far from enough."

We agree with the language of the Court of Appeals for the Second Circuit in N. L. R. B. v. Solis Theatre Corp., 403 F.2d 381, 383 (1968):

"In large part, the Board based its unit determination on the role of the local manager of the Freeman Theatre, but the evidence shows that his authority is limited to little more than overseeing the daily activities of the employees. For example, he disciplines and reprimands employees, initially interviews job applicants, although the final decisions on hiring and firing are made by Interboro, and prepares and submits vacation schedules for approval by Interboro. *It appears, therefore, that instead of being in a decision making position, the 'manager' has little or no authority on labor policy but is subject to detailed instructions from the central office.*" (Emphasis supplied.)

The Board relies on the decision of the Court of Appeals for the First Circuit in Banco Credito y Ahorro Ponceno v. N. L. R. B., 390 F.2d 110 (1st Cir. 1968) which we find readily distinguishable. In *Banco,* the Court found a San Juan, Puerto Rico, branch bank office to be an appropriate bargaining unit, but the Court relied upon factors other than the inherent functions of a branch office in carrying out the operations and policies of the bank. The Court stated at page 112:

"The real albeit limited authority of the branch manager as to matters of immediate importance to employees, the relative remoteness of the branch, the almost complete absence of interchange of personnel between Arecibo

[the branch office in question] and other parts of the system together justify the Board's designation of the Arecibo unit."

There is in the present case no such geographic remoteness of the Troy-Livernois Branch, nor is there an "almost complete absence of interchange of personnel" with the other branch offices.

In this case the Regional Director appeared to find that the employees of the individual branches form appropriate bargaining units principally because they "are responsible for the day-to-day operations [of their respective branches] and the effective implementation of the employer's policies at the branch office level." This is true of virtually every department in every business operation of any kind and is certainly not a sufficient basis for the determination of appropriate bargaining units. The record in this case in fact reveals a banking operation which is a highly centralized and fully integrated system quite different from that in the *Banco* case.

For the reasons herein stated we conclude that the Director's determination that the Troy-Livernois Branch was an appropriate bargaining unit amounted to an abuse of discretion. Accordingly, the Board's order is set aside and enforcement is denied.

EDWARDS, Circuit Judge (dissenting).

The National Labor Relations Board has wide discretion under the National Labor Relations Act in making appropriate bargaining unit determinations. NLRB v. Checker Cab Co., 367 F.2d 692 (6th Cir.), cert. denied, 385 U.S. 1008, 87 S.Ct. 715, 17 L.Ed.2d 546 (1967); Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). I think that there is substantial evidence on the whole record to support the Board's determination.