AUTOMOBILE CLUB OF MICHIGAN, Detroit Automobile Inter-Insurance Exchange, Motor Land Insurance Company, Group Insurance Company of Michigan, and Member Life Insurance Company of Michigan, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 78–1371.

United States Court of Appeals, Sixth Circuit.

Aug. 29, 1980.

Kalvin M. Grove, Carol F. Sulkes, Fox & Grove, Lawrence M. Cohen, Michael R. Lewis, Chicago, Ill., for petitioners.

Elliott Moore, Deputy Associate Gen. Counsel, Linda Weisel, N.L.R.B., Washington, D. C., Bernard Gottfried, Director, Region 7, N.L.R.B., Detroit, Mich., for respondent.

Before LIVELY and JONES, Circuit Judges, and LAMBROS, District Judge.*

## ORDER

The Automobile Club of Michigan *et al* (the "Company") petitions for review of a decision and order of the National Labor Relations Board (the "Board"). 237 NLRB No. 53. The Board cross petitioned for enforcement of its order. The Board held that the Company violated Sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* by refusing to bargain collectively with the representatives of a Board certified union. Upon review of the entire record and careful consideration of the parties' oral arguments, we hold that the Board's decision is not an abuse of its discretion.

### I.

The Company consists of five Michigan insurance corporations which constituted a single integrated business enterprise. The Michigan AAA Sales Association, Inc. (the "Union") was certified as the exclusive collective bargaining representative for a unit of salaried and commissioned sales representatives and service representatives employed in the Company's twenty three branch offices in the Michigan counties of Wayne, Oakland, and Macomb (the "Detroit Metropolitan Area"). Alternatively, the

* Honorable Thomas Lambros, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Union was certified to represent such personnel at each of the individual branches.[1]

## II.

On appeal, both parties agree that two prerequisites must be met in order for the court to enforce the Board's certification of a bargaining unit consisting of an amalgamation of individual branch offices: (1) the Company's individual branch offices must be certifiable as autonomous and appropriate bargaining units; and (2) the amalgamated unit must possess the requisite degree of administrative and geographic coherence.

### A. Branch Certification

■ The decision in *Meijer, Inc. v. NLRB*, 564 F.2d 737, 740 (6th Cir. 1976) sets forth the following criteria to guide the Board's exercise of its discretion to certify each of the Company's branch offices within the Detroit Metropolitan area as an autonomous and appropriate bargaining unit: (1) prior bargaining relationship; (2) distance of the unit from the central office; (3) employee interchangeability; (4) relative autonomy of the individual unit; and (5) the extent to which the management of the individual unit can and must deal with the day to day issues of the bargaining unit. The Board's function is to strike a balance among each of the criteria set forth in *Meijer*.

On appeal, the Company contends that the branch managers do not have sufficient local autonomy to make branch offices effective bargaining units. It relies upon the findings of branch autonomy in *Meijer* and the decisions in *Prudential Insurance Company of America v. NLRB*, 529 F.2d 66 (6th Cir. 1976), *Wayne Oakland Bank v. NLRB*, 462 F.2d 666 (6th Cir. 1972) and *NLRB v. Pinkerton*, 428 F.2d 479 (6th Cir. 1970). The Company's reliance on these decisions is misplaced. Although each branch office in *Meijer* arguably enjoyed more autonomy than the branch offices in this case, local autonomy of a branch office is only one of several criteria which the Board must consider.[2]

In the instant case the Board's factual findings of the degree of responsibility vested in the branch managers are supported in the record. Although there are areas of centralized control, branch managers have discretion to act unilaterally in important areas. In addition, the Company concurs in recommendations of its branch managers in other important areas. Thus, the decision in *Wayne Oakland Bank* is inopposite. *Wayne Oakland Bank* held that the Board's findings of fact did not support the conclusion that the "branch manager[s have] substantial responsibility in relation to the substantive matters subject to collective bargaining." 462 F.2d at 668.

The court in *Pinkerton* denied enforcement of the Board's bargaining unit determination because the Board improperly emphasized common geographical location to find cohesive interests among a group of employees. 428 F.2d 485.

In this case, we do not find that the Board too heavily weighed any one of the several criteria set forth in *Meijer*.

### B. Geographic Amalgamation

■ The Company argues the amalgamation of all branch offices within the Detroit Metropolitan area lacks administrative co-

---

1. The Company does not challenge the composition of the personnel in the certified bargaining unit. It does disagree with the bargaining unit's geographical composition. The Company argued before the Board for a bargaining unit including all such personnel within the State of Michigan.

2. Chief Judge Edwards' opinion discussed at length the ALJ's findings of fact of local autonomy. 564 F.2d at 740–41. However, Judge Edwards noted:

There are factors which favor one bargaining unit. Although interchangeability of employees with the original group of stores in the Grand Rapids area would obviously pose difficulties, interchangeability with the Ypsilanti store is easily possible. It is also true Meijer, Inc's policy was to maintain a strong central control on Labor policy. And into the bargain, a history of a company-union bargaining relationship which extended back to 1963.
Id. at 742.

herence. The Board concedes some portion of each of the Company's five administrative or supervisory concerns cannot justify the Board's decision. However, common economic and social concerns may justify the amalgamation of branch offices. In this case the differences in pay scales, concentration of work force, and interchangeability of employees between employees within and the employees outside of the Detroit Metropolitan area support the Board's decision.

There may be some merit to the Company's argument that the bargaining unit, as certified, may not be the most appropriate unit. Nevertheless the law requires enforcement of the Board's Order unless we find the unit as certified is inappropriate. We are unable to conclude that the certified unit is inappropriate.

Accordingly, the Order of the Board is ENFORCED.