**OFFICE DEPOT, INC.**
**Petitioner/Cross–**
**Respondent,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent/Cross–**
**Petitioner.**

Nos. 98–5771, 98–5975.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1999.

Decided July 2, 1999.*

* This decision was originally issued as an "unpublished decision" filed on July 2, 1999. On July 19, 1999, the court designated the opinion as one recommended for full-text publication.

Seth L. Neilight, Mark Theodore (briefed), Elizabeth D. Parry (briefed), D. Gregory Valenza (argued), Jackson, Lewis, Schnitzler & Krupman, San Francisco, CA, for Petitioner/Cross–Respondent.

David Habenstreit (briefed), National Labor Relations Board, Washington, DC; Aileen A. Armstrong, John D. Burgoyne (briefed), Preston Pugh (argued and briefed), National Labor Relations Board, Washington, DC, for Respondent/Cross–Petitioner.

Before: MERRITT, NELSON, and RYAN, Circuit Judges.

MERRITT, Circuit Judge.

This case is before the Court on the petition for review of the employer, Office Depot, of the Decision and Order of the National Labor Relations Board requiring Office Depot to bargain with Teamsters Local 470 as the exclusive bargaining representative of the employees in a unit including truck drivers employed by Office Depot at its Westhampton, New Jersey, Customer Service Center, but excluding all other employees, guards, and supervisors. The case presents three issues: (1) Whether the NLRB's unit determination was appropriate? (2) Whether the NLRB's agent's conduct prior to the representation election destroyed the perception of Board neutrality necessary for a free and fair election? (3) Whether the Board denied Office Depot due process of law by refusing to hold a hearing on its objections to the November 14, 1997, election?

 Section 9(b) of the Labor Relations Act, 29 U.S.C. § 159(b) empowers the Board to determine "the unit appropriate for the purposes of collective bargaining" in each case, "in order to assure to employees the fullest freedom in exercising the rights guaranteed by the Act ..." The determination of an appropriate bargaining unit under Section 9(b) "lies largely within the discretion of the Board, whose decision, 'if not final is rarely to be disturbed....'" *South Prairie Construc-*

508

tion Co. v. International Union of Operating Engineers, 425 U.S. 800, 805, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976), quoting, Packard Motor Car Co. v. NRLB, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). In determining a bargaining unit, the Board need only select "an appropriate unit rather than the most appropriate unit." NLRB v. First Union Management Inc., 777 F.2d 330, 333 (6th Cir.1985).

■ Office Depot asserts that the bargaining unit of truck drivers was inappropriate because the unit should have included all the employees at the Westhampton center and its satellite centers. Given the amount of deference accorded to the Board in bargaining unit determinations, we do not accept Office Depot's argument. As the Board found, Westhampton truck drivers, unlike other employees, spend most of their time away from the Westhampton customer service center. They are required to have a Department of Transportation medical card and receive special training and assessments in their positions. Drivers routinely attend their own special meetings. Truck driver's security badges give them access to different parts of the Westhampton center than other employees. It is rare that other employees transfer to driving positions or drivers transfer to warehouse positions. Drivers do not perform the work of the other warehouse employees, except when they are placed on light duty or return early from the road. Given this "community of interests" unique to the drivers, it cannot be said that the Board abused its discretion in determining the appropriate bargaining unit. See Bry-Fern Care Center, Inc. v. NLRB, 21 F.3d 706, 709 (6th Cir.1994).

■ The Westhampton Center had satellite delivery centers in East Rutherford, New Jersey, Norristown, Pennsylvania, and New Castle, Delaware. Office Depot's position is that any bargaining unit should encompass all four facilities because they are a functionally integrated unit. A single plant or store bargaining unit is presumptively appropriate and this

presumption is rebutted only if the single facility unit has been so effectively merged into a more comprehensive unit or so functionally integrated that it has lost its separate identity. D & L Transportation, 324 NLRB 160, 1997 WL 453115 (1997). In making this determination, the Board looks at such factors as central control over daily operations and labor relations including: the extent of local autonomy; similarity of skills, functions and working conditions; degree of employee interchange; and bargaining history. Here, each of Office Depot's individual centers is headed by a manager who controls the operations within the department and to whom all of the employees within the department report. These managers have the authority to recommend employee wage increases which are accepted and implemented about 80 percent of the time. There is little employee interchange between the Westhampton Customer Service Center and its satellite delivery centers. Westhampton drivers are rarely assigned to the satellite centers and this occurs only in emergency situations. There is no evidence that Westhampton employees have ever been assigned to the East Rutherford site or vice-versa. Westhampton and its satellite centers are dispersed. The East Rutherford satellite is 75 miles from the Westhampton Center; the Norristown satellite, 50 to 55 miles; and the New Castle satellite, about 45 miles. Once again, given the amount of deference accorded to the Board in making bargaining unit determinations, it cannot be said that the Board erred in limiting the bargaining unit to the Westhampton center. The fact that in other situations at Office Depot, central warehouse employees were included in a unit with drivers is not dispositive of the unit determination in this case. Unit determinations, as previously stated, are "largely within the discretion of the board" and will be upheld if the choice falls within a range of reasonable units. The law does not require one particular unit but contemplates a reasonable exercise of discretion

by the Board. Based on the facts in the record, we cannot say that the law requires inclusion of warehouse employees in the unit.

Following the issuance of the decision and direction of election in this matter on October 17, 1997, the employer filed a request for review with the Board. During the pendency of the request for review, an election was scheduled for November 14, 1997. When it appeared that the Board might not rule on Office Depot's request for review prior to the scheduled election, the board agent in charge of the election informed the parties that, absent a ruling, the election would be conducted and the ballots impounded as provided in Section 102.67(b) of the Board's Rules. As it turned out, the request for review was subsequently denied and the election was conducted as scheduled.

■ Office Depot contends that the agent gave favorable treatment to the Union by communicating "on the eve of the election" that the request for review had been denied, and that the ballots would be counted rather than impounded without appraising Office Depot of the decision in a timely manner. Office Depot claims that in this way, the Agent "undermined the integrity of the election process, interfered with the voting employees perception of Board neutrality, and prejudiced the outcome of the election in the union's favor." Office Depot submitted a questionnaire it had prepared which an employee had completed and signed. The employee stated he had been informed by Office Depot both orally and in a memo that the ballots were to be impounded. The employee stated:

> Some employees felt that this was an effort by the company to drag it out, a last ditch effort. It pushed some people who were leaning the company's way to the union. They were thinking that the company was stooping low, that it was a trick.

However, these are the facts: On Monday, November 10, 1997, the Regional office was informed by the Office of the Executive Secretary that the Board might not rule on the employer's request for review by the scheduled time of the election, which was 6 A.M. to 8 A.M. Friday, November 14, 1997. Because November 11 was a federal holiday, both the employer and the union were informed of this possibility on November 12. The employer communicated to its employees that the ballots would be impounded.

At approximately 5:30 P.M. on November 13, the day before the election, the Board informed the Regional Office that the request for review was denied and that the election could be held without impounding the ballots. The agent immediately attempted to contact the employer's counsel, Robert Cassel, at Office Depot's facility in New Jersey, but without success. She then called Cassel's office in San Francisco, California, and spoke with his secretary and left a detailed message that the request for review had been denied and that the ballots would be counted at the conclusion of the election. From Cassel's secretary, the agent also obtained information concerning the hotel where he was staying in New Jersey, and left the same message on his hotel room voice mail. After so informing Cassel, the agent contacted the union and gave the same message. Around the same time, the agent was contacted in her office by an employee and she told the employee that the ballots would not be impounded but instead would be counted. At the pre-election conference held just prior to the 6 A.M. opening of the polls on November 14, employer co-counsel Mark Theodore told the agent that counsel had received her voice mail at their hotel late the previous evening.

In *Hudson Aviation Services*, 288 NLRB 870, 1988 WL 213739 (1988), the NLRB held that an election will be set aside only when it concludes that the actions of the agent of the board impermissibly put into question the Board's neutrali-

**510**

ty. Using that standard, no reasonable person could conclude that the agent put into question the Board's neutrality in this election. The agent endeavored to contact the parties as soon as the Board's decision on the request for review was known. Most importantly, as the employer should be well aware, pursuant to Board rules, the filing of a request for review creates the possibility that the ballots may be impounded, and that a decision on the request for review may be made just before the election. Once the request for review was filed, Office Depot had the opportunity to inform its employees of the consequences on the election that the request for review might have. The agent of the Board acted responsibly in promptly informing first the employer and then the union of the denial of the request for review.

■ Finally, Office Depot argues that the NLRB abused its discretion by failing to conduct an evidentiary hearing on its contention that the agent who conducted the election undermined the integrity of the election and prejudiced Office Depot. This claim is without merit. This Court has validated the Board's long standing policy of conducting evidentiary hearings only when objecting parties show the existence of "substantial and material factual issues." 29 C.F.R. 102.69(d); *NLRB v. Tennessee Packers, Frosty Morn Div.*, 379 F.2d 172, 177–78 (6th Cir.1967). As was demonstrated above, the Board found that even accepting Office Depot's factual allegations as true, that evidence failed to provide any basis for setting aside the election. There were no issues that could be illuminated by an evidentiary hearing.

Accordingly, the judgment of the National Labor Relations Board will be enforced.