ZATKOFF, J.,
dissenting.
As noted by the majority, this Court reviews the NLRB’s decision to make certain it is not arbitrary, unreasonable, or an abuse of discretion. Armco, Inc. v. NLRB, 832 F.2d 357, 362 (6th Cir.1987); NLRB v. Child World, Inc., 817 F.2d 1251, 1253 (6th Cir.1987). I agree with the law and facts that serve as the basis of the majority opinion and, accordingly, recite them here only as necessary to elucidate my opinion. Having said that, I believe that the applicable law and the facts of this case demonstrate that the NLRB decision to allow separate elections at the Highland Park and Mt. Morris facilities was unreasonable and an abuse of discretion because its decision was not supported by substantial evidence. Therefore, for the reasons set forth below, I would grant Guardian’s petition for review and deny the NLRB’s petition for enforcement. Accordingly, I respectfully dissent from the majority opinion.
I.
The burden is on the employer to show that the bargaining unit chosen is inappropriate. See Dunbar Armored, Inc. v. NLRB, 186 F.3d 844, 847 (7th Cir.1999); In re J & L Plate, Inc., 310 NLRB 429, 1993 WL 37605 (1993). A bargaining unit can be in the form of a union representing the employees at multiple facilities of the employer (hereinafter, a “central unit” or “central bargaining unit”) or a union representing employees at one of multiple locations of an employer (such as Guardian’s Highland Park facility) (hereinafter, a “single-location unit” or “single-location bargaining unit”). I believe Guardian met its burden of demonstrating that the single-location units designated by the NLRB were inappropriate.
Although the Supreme Court has held that the NLRB’s determination that a particular collective bargaining unit is appropriate “lies largely within the discretion of the Board,” and that an exercise of the NLRB’s discretion “is rarely to be disturbed,” South Prairie Constr. Co. v. Operating Eng’rs, Local 627, 425 U.S. 800, 805, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (citing 29 U.S.C. § 159(b)), such discretion is not unfettered. The NLRB is charged with determining the scope of the unit appropriate for the purposes of collective bargaining, so as to “assure to employees the fullest freedom in exercising the rights guaranteed by the Act....” 29 U.S.C. § 159(b). An “appropriate” unit is one which furthers the National Labor Relations Act’s policy of efficient collective bargaining. See 29 U.S.C. § 159(b). When making a determination as to whether to approve a bargaining unit as appropriate, *308 however, “the extent to which the employees have organized shall not be controlling.” See 29 U.S.C. § 159(c)(5); NLRB v. Catherine McAuley Health Ctr., 885 F.2d 341, 344 (6th Cir.1989). Moreover, the agency must explain the basis for its order and give a “clear indication that it has exercised the discretion with which Congress has empowered it.” NLRB v. Metro. Life Ins. Co., 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). The agency also must comport with the requirement that the decision “effectuate the [National Labor Relations] Act’s policy of efficient collective bargaining.” See Catherine McAuley Health Ctr., 885 F.2d at 344. Finally, the NLRB’s findings must be “supported by substantial evidence on the record considered as a whole.” 29 U.S.C. § 160(e); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). I do not believe the NLRB has fulfilled the foregoing obligations in this case.
II.
Although there is a presumption that a single-location unit in a multiple facility business is an appropriate bargaining unit, NLRB v. Child World, Inc., 817 F.2d 1251, 1253 (6th Cir.1987), the NLRB still must consider several factors when determining whether that presumption has been rebutted. Those factors include assessing the: (1) extent of centralized control over daily operations and labor relations, including local autonomy over these things; (2) similarity of skills, functions, and working conditions of employees at the separate facilities; (3) degree of employee interchange; (4) geographic proximity of the various branch offices; and (5) bargaining history (of which there is none in this case). Office Depot, Inc. v. NLRB, 184 F.3d 506, 508 (6th Cir.1999). When the evidence regarding Guardian’s business is viewed in an overall context (rather than on an element by element basis as the Director did), I believe the evidence clearly and overwhelmingly demonstrates that the presumption that single-location units are appropriate has been rebutted in this case.
When the Director granted the Union’s request that there be two separate elections at the Highland Park and Mt. Morris facilities, the Director noted that a single-location unit is “presumptively appropriate” unless other considerations show that the units have been effectively merged or otherwise lost their separate identity (emphasis added). The Director then determined that single-location units at Highland Park and Mt. Morris were appropriate because (i) the branches retained some autonomy over day-to-day operations, (Ü) there was minimal interchange and interaction between employees at the various branches, and (in) there was a significant geographical distance between the facilities. Finally, the Director appeared to give great weight to the fact that the employees desired single-location units.
I do not believe the Director’s conclusions are based on substantial evidence which would support allowing elections at both the Highland Park and Mt. Morris facilities.** This is especially true where the Director acknowledged that (a) Guardian had centralized control over personnel decisions, (b) the employees at all locations had the same skills, and (e) all employees *309 were paid on the same scale. These considerations demonstrate that the Highland Park and Mt. Morris facilities (and their employees) “have been effectively merged or otherwise lost their separate identities.” I believe the Director simply ignored these facts once the Director unreasonably concluded that there were some facts that would permit the Union to have the bargaining units it sought.
The NLRB’s analysis of the appropriate bargaining unit in this case provides a classic example of why courts should evaluate all of the issues on a case-by-case basis, taking into consideration all of the evidence before the court. Here, the NLRB analyzed each element in a vacuum, without consideration of the other elements. When doing so, the NLRB lost sight of the objective of analyzing the case, i.e., choosing the appropriate unit — the one which furthers the NLRA’s policy of efficient collective bargaining. For example, the NLRB focused heavily on the degree of employee interchange between the Guardian branches. The NLRB then compared the employee transfer related facts of this case to the employee transfer related facts of other cases where single-location units were approved and concluded that the employee transfers at Guardian were much lower than those other cases. Such shortsighted analysis ignores the other significant facts of each case that might have been instrumental, or even determinative, when the NLRB or the courts held that single-location units were appropriate.
III.
Upon reviewing the record, I do not believe there is sufficient evidence to support the Board’s critical findings here. Rather, the overwhelming evidence demands that the only appropriate bargaining unit (upon a successful election) would be one that encompasses the workers at both the Highland Park facility and the Mt. Morris facility, ¿a, a central unit. The law in this Court is clear: where labor policy is determined centrally, and where local managers do not have the authority to decide collective bargaining matters, the facts weigh against location-specific (single-location) bargaining units. See NLRB v. Pinkerton’s, Inc., 428 F.2d 479, 484 (6th Cir.1970); Wayne Oakland Bank v. NLRB, 462 F.2d 666, 667-68 (6th Cir. 1972). In this case, only Guardian’s central human resources department does anything with regard to hiring, firing, and transferring employees. Moreover, it is undisputed that (1) employment policies are formulated centrally; (2) all hiring, firing, transfers, and promotions are done centrally; (3) personnel records are kept in the central office; *** and (4) all employees, regardless of home office, are subject to the same rules and conditions, are paid on the same scale and are given the same benefits and time off.
Moreover, even in the Director’s decisions which weighed in favor of single-location units, there were significant oversights. First, the Director found that local supervisors direct the day-to-day operations at the branches, but this finding is unsupported. The Director’s conclusion that the supervisors permanently present at each site control any day-to-day opera *310 tions is erroneous because work assignments and routes are generated centrally. Moreover, contrary to the Director’s findings, on-site managers do not perform employee evaluations. As Jeffrey Prough, the President of Guardian Security Services, testified, on-site managers contribute to employee evaluations, but they do not perform all of the functions related to evaluating employee performance. Similarly, the fact that on-site supervisors are the primary people responsible for ensuring employee compliance with company policy and that the employees perform their assigned tasks does not reflect local autonomy. Rather, the on-site supervisors simply ensure that the employees in each location are adhering to the central and universal policies of Guardian. They report problems directly to Hugh Adams, the general manager of Guardian’s armored car division and the problems are handled centrally.
Next, the Director found that the degree of employee interaction and interchange was minimal. The evidence demonstrates otherwise. There are the two regular routes between each of the branches, instances where an armored car will begin the day at one branch and end up at another, and interaction with employees from the other branches at two “consolidation centers” operated by bank customers. There is also a weekly dispatch of personnel from one branch by dispatchers at different branches. Job openings are posted company-wide, not just at a specific branch. In addition, employees from the branches interact with one another at orientation and at company-wide awards ceremonies and social events.
Clearly, there is less evidence of permanent and temporary transfers at Guardian than in cases such as American Courier and Purolator Courier, however, this Court has been clear in holding that the degree of employee interaction is not controlling in determining the appropriate unit, particularly where (as here) there is no autonomy with respect to the traditional subjects of collective bargaining. See Wayne Oakland Bank, supra. As such, comparing the employee transfer facts of this case in a vacuum (as the NLRB did) is meaningless and is not determinative of whether a single-location bargaining unit is or is not appropriate. In fact, whether temporary and permanent transfers are used is more a function of need than anything else. As the record in this case evidences, the temporary transfers occurred when one facility was short of employees due to call-ins and there was not frequently a need for such transfers. There is no suggestion that Guardian discouraged transfers or was averse to them. Accordingly, the NLRB’s finding that the transfers at Guardian were “minimal” is not significant.
The NLRB also relied on the distance between the facilities in formulating its decision. This issue is likewise meaningless when considering the appropriateness of single-location bargaining units. The NLRB and the courts have exhibited absolutely no uniformity on this issue. In almost any case, the Director can rely on and cite to a prior decision where the geographical facts will be consistent with the bargaining unit determination the Director makes in the case under review. This case is no different.
At Guardian, the facilities and employees at issue were 75 miles apart. As noted by the majority, there have been cases where facilities were located over greater distances than the distance from Highland Park and Mt. Morris, yet they were deemed unfit for single-location units, see American Courier, 184 NLRB at 603; Purolator Courier, 265 NLRB at 661; Szabo Food Services, Inc. v. NLRB, 550 F.2d *311 705, 708 (2d Cir.1976); Frito-Lay, 202 NLRB at 1011; Waste Mgt. of Washington, Inc., 331 NLRB 309, 2000 WL 791212 (2000), and instances where a similar or shorter distance was present, but single-location units were approved. See, e.g., Office Depot, 184 F.3d at 508; First Security Servs. Corp., 329 NLRB 235, 237, 1999 WL 776225 (1999). As such, I do not believe that geographical locale of the Highland Park and Mt. Morris facilities should carry much, if any, weight in evaluating the appropriateness of single-location units in this case.
IV.
Finally, I also believe that the NLRB’s decision did not comport with the requirement that its decision “effectuate the Act’s policy of efficient collective bargaining.” See Catherine McAuley Health Ctr., 885 F.2d at 344. First, it is far more effective to have one bargaining unit to cover the two facilities. Second, there is no evidence that the labor issues and conditions facing the workers in Mt. Morris are any different than the labor issues and conditions facing the workers in Highland Park. Third, and most importantly, it is undisputed that the labor related polices, records and decisions are made and maintained centrally, not in each location. Such uniformity of issues and centrality of operations strongly demonstrates that one central bargaining unit for the Highland Park and Mt. Morris facilities is not only the most appropriate unit in this case, but rather the only appropriate unit.
V.
Accordingly, for the reasons stated above, I would conclude that there is a lack of substantial evidence to support the NLRB’s determination that single-location units are appropriate for Guardian’s Highland Park and Mt. Morris locations. I would further conclude that the NLRB’s determination was unreasonable and an abuse of its discretion. Finally, I would deny the NLRB’s petition for enforcement and would grant Guardian’s petition for review.

 I would note the Director’s findings and the majority opinion appear to take into consideration the functioning and geographic location of the Comstock Park facility. Although the Union initially sought to include the workers at the Comstock Park facility in the statewide election, the ultimate request for elections was limited to workers at the Highland Park and Mt. Morris facilities.

 Contrary to the Director’s finding that the employees at each branch location maintain their time at that location, the evidence shows that their time is kept in a central computer system. Employee time is only entered in branch locations, not kept at them. The Court fails to see how entering time at the facility a Guardian employee works at has any bearing on what the appropriate bargaining unit is. Employees at every company enter their time where they work, no matter where in the company the employee records and control are kept.